**EXXON CORPORATION, Appellant,**

v.

**NATIONAL FOODLINE CORPORATION,**
Appellee.

Appeal No. 77–629.

United States Court of Customs and Patent Appeals.

June 30, 1978.

Richard G. Kline, Beveridge, DeGrandi, Kline & Lunsford, Washington, D. C., attys. of record, for appellant; Francis X. Clair, J. Spencer Daly, New York City, of counsel.

Arthur S. Caine, Minneapolis, Minn., atty. of record, for appellee; William T. Bullinger, Cushman, Darby & Cushman, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board (board), 196 USPQ 444 (1977), granting appellee's motion for summary judgment and dismissing appellant's opposition to the registration of EXXELLO for "ICE CREAM MANUFACTURING MACHINE" on application serial No. 36,213, filed November 4, 1974, claiming first use on November 21, 1973. We affirm.

Familiarity is assumed with the published board opinion which sets forth the details of the proceedings herein. In brief outline, this opposition has proceeded under Federal Rules of Civil Procedure (FRCP) 12(b)(6) and 56(c), made applicable to oppositions by 37 CFR 2.116. Appellee's application to register EXXELLO was published for opposition and Exxon Corporation (hereinafter Exxon) filed its notice of opposition. Without answering the notice, appellee moved under FRCP Rule 12(b)(6) to dismiss it for "failure to state a claim upon which relief can be granted," and the board dismissed, giving time to Exxon, however, to amend its pleading. Exxon then amended its notice by adding four paragraphs to it. Appellee responded by renewing its motion to dismiss, supporting it by an affidavit of its president and exhibits showing numerous relevant facts. Exxon countered with an affidavit by Julius R. Lunsford, Jr., one of its counsel, partly factual and partly argumentative, and appellee responded to it by another affidavit of its president. In this posture of the case, the board treated the motion as one for summary judgment under FRCP Rule 56(c), as is provided in the last sentence of Rule 12(b), granted the motion for summary judgment, and dismissed the opposition "with prejudice." This appeal followed.

Essentially, the question before us is whether summary judgment was proper under the circumstances of this case. Stated otherwise, have the rights of Exxon been prejudiced by depriving it of the opportunity to take testimony, have discovery, and indulge in cross-examination and the other attributes of a full trial? We think not.

The basic purpose of summary judgment procedure is one of judicial economy—to save the time and expense of a full trial when it is unnecessary because the essential facts necessary to decision of the issue can be adequately developed by less costly procedures, as contemplated by the FRCP rules here involved, with a net benefit to society. We recognize that summary judgment is to be granted cautiously in order to preserve substantive rights; nonetheless, it is entirely proper where, after following the FRCP procedures, no genuine issue of material fact remains. As we said in *U. S. Steel Corp. v. Vasco Metals Corp.,* 394 F.2d 1009, 55 CCPA 1141, 157 USPQ 627 (1968), citing 6 J. Moore's Federal Practice ¶ 56.15[3] (2d ed. 1966), "It is well settled that the function of summary judgment is to avoid a useless trial." "Useless" in the context of this case means that more evidence than is already available in connection with this motion could not be reasonably expected to change the result herein. We turn, now, to discussion of the issue, the evidence already adduced thereon, the decision of the board, its apparent correctness, and whether more evidence might change that decision.

Exxon opposes registration of EXXELLO for ICE CREAM MANUFACTURING MACHINE[S] on very broad grounds, asserting, as statutory bases, section 2(a) and 2(d) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1052(a), (d). It alleges that more than a year prior to appellee's stated first use of EXXELLO it was using EXXON "as a trade name and house mark." Paragraph 2 of both its original and amended notice of opposition reads:

In actual use, Applicant's mark and Opposer's trade name and mark are displayed in the following Manner:

Applicant                    Opposer

# EXXELLO  EXXON

Its arguments rely heavily on this visual representation, which speaks loudly for itself. In fact, the essence of Exxon's case appears to us to reside in this passage from its brief, which is, after all, a matter of opinion:

It hardly can be disputed that the visual comparison appearing in the second paragraph of the pleadings fulfills the ultimate objective of preciseness by presentation of a picture which is worth a thousand words to establish the visual similarity that immediately suggest [sic] a connection between the opposed mark and EXXON trade name and house mark.

Oddly, no mention is ever specifically made of the double X's in the two marks, but we cannot escape the impression gleaned from the argument, that they are the crux of the matter. Exxon's amended notice asserts, for example, that EXXELLO is a "colorable imitation" of EXXON and its brief says it "visually simulates the inherently distinctive origin-indicating presentation of the EXXON name and house mark."

The statute relied on reads, in pertinent part:

*Sec. 2. Trademarks registrable on the principal register*

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

(a) Consists of or comprises  *  *  * deceptive  *  *  * matter; or matter which may  *  *  * falsely suggest a connection with persons  *  *  * ;

\*    \*    \*    \*    \*    \*

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive  *  *  * .

Exxon's case under § 2(a) is that appellee's use of EXXELLO on ICE CREAM MANUFACTURING MACHINE[S]—assuming, as we shall do, and as the board probably did, use of the mark in the format depicted above—would falsely suggest a connection with Exxon. Exxon's position

under § 2(a) is succinctly presented in its statement of the first issue [1] which reads:

> Does Applicant's mark, when used [as depicted above], consist of or comprise deceptive matter or matter which *may* falsely suggest a connection with the EXXON trade name and/or house mark apart from any particular product line?

Because of its position that no "product line" should be involved in consideration of this question, Exxon has not mentioned one in its pleadings. In fact, the notice of opposition so concentrates on the trade name and/or house mark basis of the opposition that it mentions no product or service of any kind and does not even disclose what line of business Exxon is engaged in. While it makes a single reference to its "registered house mark," no registration (state, Federal, or other) is mentioned. Not until one reaches the Lunsford affidavit does the record contain even a suggestion that Exxon *may* be one of the "major brand oil companies" which he mentions. He does not say it is. The only record evidence of Exxon's business is in the second affidavit of appellee's president wherein he states: "I am aware of the fact that the Exxon Corporation is one of the world's largest corporations, and that it deals in petroleum products. In my business travels in some parts of the United States, I have observed in a limited number of states, retail gasoline filling stations bearing Opposer's house mark EXXON * * *." In contrast, Exxon stands silent in its pleading and brief about its business, its products, and its services while implying, without proof, that EXXON is a famous name and celebrated house mark.

Exxon's position under § 2(d) is similar to its position under § 2(a), referring to the likelihood of confusion, mistake, or deception as to the origin of appellee's goods because of the similarity of EXXELLO to the *trade name* EXXON, there being, of course, no reference to any product or service of Exxon nor to any trademark or service mark, or a registration of either, used or owned by Exxon.

Appellee's side of the factual situation is simple. Its application is to register EXXELLO for a single product, an ice cream manufacturing machine, supported by specimens of the mark as used in the form of prints of a photograph of a machine of the type which makes and delivers "soft ice cream," the machine having an oval label at the top of modest proportion on which EXXELLO appears in the type form we have depicted. The drawing of the application sets forth the mark in ordinary block letters so that registration, if issued, would not be restricted to any particular form or type. We agree with Exxon, of course, that it would *include* the type form in which used. Appellee's president's affidavits supply additional relevant facts, as follows.

Appellee's principal business is the manufacture of fast-food equipment and related products including soft ice cream freezers, machines which make a product identified by such apparently well known names as "Dairy Queen," "Tastee Freeze," "Dairy Freez," "Foster Freeze," "Frogurt," "Mari-Yo," etc. Some eight different models of soft ice cream manufacturing machines of "advanced design" bear the name EXXELLO and they sell at retail to ice cream manufacturers, not the general public, at prices ranging from about $3,500 to $11,000 each. In making soft ice cream, a liquid mix is injected into the machine together with air from the environment of the ma-

---

1. Two other "issues" are stated as follows:
   2. If the mark being used by the Applicant falsely *suggests a connection* with Exxon apart from any particular product line, is it registrable?
   3. Was it error to dismiss the present opposition for failure to plead the use of Exxon as a trade name in connection with any goods?
   We do not regard "2" as an issue. It is a self-evident proposition which answers itself in the negative. We do not regard "3" as an issue present in this case because the opposition was not dismissed for any such "failure to plead." As we read the board's opinion, it dismissed the opposition because, on the evidence in the case, it was persuaded that the registration of EXXELLO would be in violation of neither § 2(a) nor § 2(d) and because no issue of material fact remains.

chine to produce the product. Consequently, the air must be free of odorous fumes such as gasoline fumes, making use of such machines in or near gasoline service stations undesirable. Moreover, state laws and regulations relating to ice cream manufacture and the handling of dairy products may prevent their use in such places. Appellee is not in the dairy business and does not make or sell dairy products, frozen or otherwise. Its president testified that he knows of no instance in which ice cream is sold under the same name or mark as that applied to the freezer from which it is dispensed, his affidavit making reference, in this connection, to the six principal freezer manufacturers.

Pertinent provisions of the Federal Rules of Civil Procedure read as follows:

*Rule 12.* * * *

    \*     \*     \*     \*     \*     \*

  (b) * * * Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion * * * (6) failure to state a claim upon which relief can be granted * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 56. SUMMARY JUDGMENT

    \*     \*     \*     \*     \*     \*

  (e) *Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein * * *. When a motion for summary judgment is made

and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading, but his response,* by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.* [Emphasis ours.]

The only response made by Exxon to appellee's motion is the affidavit of Lunsford. Insofar as it states facts rather than opinions or arguments, it says that Mr. and Mrs. Lunsford visited four gas stations in the vicinity of Atlanta, Georgia, on a Saturday afternoon. The gist of it is that those stations sold packages of ice cream and some other food products. None was an Exxon station. Nothing is said about any of them having ice cream manufacturing machines on the premises. Mr. Lunsford also said he talked to Exxon executives in Atlanta and apparently intended to say that they said Exxon sells ice cream at "stations on Interstate 75 south of Atlanta," though the sentence is incomplete. Mr. Lunsford said he knew personally that all major brand oil companies sell ice cream at their stations on certain highways. The rest of his affidavit is lawyer's argument rather than factual, asking "what would happen if 'Exxello' ice cream were offered for sale in 'Exxon' stations—which is likely, and more importantly confusion as to source of the product would be rampant." And so on. There being no evidence that there is any "Exxello" *ice cream,* we disregard this argument.

Appellee's president filed a rebuttal affidavit stating that he and two others visited the same four gas stations reported on by Mr. Lunsford and at each location found what is commonly referred to as "convenience stores" with gas pumps. At each location was a *storage* freezer where ice cream products were kept for sale, none of the stores manufacturing ice cream on the premises.

On this record, the board found that purchasers familiar with the trade name or house mark EXXON would not, upon encountering the mark EXXELLO on an ice cream manufacturing machine, believe that it was made by, sponsored by, or in some way connected with Exxon. It also found "no genuine issue of any material fact," relevant to the issues before it, and therefore granted summary judgment of dismissal of the opposition.

We find no error in the board's decision.

On the record as presented, we cannot see that the mark EXXELLO on an ice cream manufacturing machine, selling for from $3,500 to $11,000 to a manufacturer of ice cream, is going to falsely suggest to him some connection with a company whose trade name or house mark is EXXON or that EXXELLO contains any deceptive matter.

After its initial dismissal, the board was most solicitous of Exxon's rights and gave it an opportunity to amend its pleading. Exxon then asserted that EXXELLO is a "colorable imitation" of EXXON. We do not agree that it is, considering standard definitions of "colorable."

Appellee has clearly explained on the record by affidavit evidence the nature of the product on which it uses EXXELLO, the nature of its business, and the channels of trade in which its EXXELLO product moves.

Whatever the business of Exxon may be—and it has not seen fit to plead or show what it is—it has done nothing under well-established procedures available to it under the Federal Rules of Civil Procedure to show why concurrent use of EXXELLO and EXXON would falsely suggest a connection under § 2(a), or cause confusion, mistake, or deception under § 2(d). It has not shown, as required by FRCP Rule 56(c), what issue of material fact remains to be proved which could possibly establish that the board's decision under either § 2(a) or § 2(d) was in error. Having carefully studied Exxon's brief and all of the suggestions of matters it might prove, we see none that would lead us to a different conclusion.[2] We are mindful of Exxon's suggestion that, given the opportunity by reversal of the summary judgment, it might like to present evidence to show "the enormous goodwill associated with Exxon, the unique nature, strength and fame of Exxon as a trade name and house mark, awareness of the Exxon name and house mark when the opposed mark was adopted, use of Exxon as a fanciful uniform identification for various diversified businesses and numerous unrelated collateral products * * * ." In considering, under the § 2(a) and (d) issues, questions of *law* which Exxon also includes in its list, namely, "likelihood of mistake, deception, or injury to the reputation of Exxon, confusion of source, confusion of identity, confusion of connection and confusion of sponsorship," we have, of necessity, given the benefit of the doubt to Exxon as the prior user and have assumed those matters about its mark which it would like to prove, wherefore they are not "issues." As to appellee's awareness of EXXON when adopting EXXELLO, we regard it as irrelevant in this opposition.

The decision of the board is *affirmed.*

*AFFIRMED.*

---

2. One aspect of Exxon's brief merits comment for the guidance of the bar. Rule 5.9 of the rules of this court prescribes the content of briefs. Section (b)(5) of that rule reads:

> ARGUMENT. The argument should be opened with a concise summary of argument which states clearly and succinctly the points made in the brief. The points stated should then be used as headings in the body of the argument.

The argument in Exxon's brief comprises sixteen pages under five one- or two-line headings, A, B, C, D, and E. There are no concise points used as headings, merely titles. Preced-ing the body of the argument, under the heading "SUMMARY OF ARGUMENT," and extending for over five pages, are some *sixty-two* brief statements or contentions, arranged under the same headings A, B, C, D, and E, each being from one to five lines long except for one of twelve lines. Five pages of minutiae expressing every thought the brief writer has set down is not what our rule means by either "concise summary" or succinct statement of "points"; sixteen pages of argument cannot have sixty-two point headings. The court has not found this presentation helpful or in compliance with the above rule.

MILLER, Judge, concurring.

The board correctly concluded that—

since opposer in its affidavit has not attested to the use of the term "EXXON" as a trade name or house mark to identify any product or service of opposer, we conclude that opposer has not overcome the facts set forth and attested to in applicant's exhibits and affidavit . . .

Fed.R.Civ.P. 56(e) places an affirmative duty on a party opposing a motion for summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Exxon has failed even to allege such facts and, on that basis, summary judgment was correctly awarded against it.