**LEVI STRAUSS & CO.,**
**Applicant/Appellant,**

v.

**GENESCO, INC., Opposer/Appellee.**

**Appeal No. 84–643.**

United States Court of Appeals,
Federal Circuit.

Aug. 16, 1984.

John F. Sutton, San Francisco, Cal., argued for applicant/appellant.

Virginia S. Taylor, Atlanta, Ga., argued for opposer/appellee. With him on the brief was Miles J. Alexander, Atlanta, Ga.

Before MARKEY, Chief Judge, and FRIEDMAN and KASHIWA, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a grant of summary judgment by the Trademark Trial and Appeal Board (Board) of the U.S. Patent and Trademark Office (PTO) to opposer Genesco, Inc., (Genesco). Levi Strauss & Co. (Levi) sought registration on the principal register for a mark consisting of an unlettered orange tab protruding from a structural seam of a shoe. The tab is shown in this drawing in the opposed Application Serial No. 62,247.

The Board found that Levi had failed to raise a genuine issue of material fact in respect of Genesco's showing that "[t]he cumulative evidence of use of the TAB device by others than [Levi] is so extensive that it precludes a finding that the TAB device has acquired secondary meaning and functions as a mark to identify and distinguish applicant's shoes from those of others." *Genesco, Inc. v. Levi Strauss & Co.,* 219 USPQ 1205, 1213 (TTAB 1983). We affirm.

*Background*

Levi's application, filed September 5, 1975, claimed first use on April 15, 1975, and sought registration under Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), which provides, in pertinent part:

[E]xcept as expressly excluded ... nothing herein shall prevent the registration [on the principal register] of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the 5 years next preceding the date of the filing of the application for its registration.

The Examiner refused Levi's registration because the tab appeared "to be in the nature of an ornamental design" and did not indicate the origin of shoes "within the meaning of Section 2."

Levi responded by citing widespread use and promotion of the tab as a trademark on Levi's other products, and submitted an affidavit dated October 13, 1976, asserting use on shoes marketed in Australia and one year of use on shoes in selected U.S. test markets.

The Examiner again refused registration, viewing Levi's evidence as insufficient to show distinctiveness and noting that one year's use on shoes failed to satisfy the five year prima facie proviso of Section 2(f).

Levi requested reconsideration, arguing for a presumption of distinctiveness based on its use on and registration for pants and jeans. On March 15, 1978, and over Levi's protest, the Examiner suspended action on the application pending outcome of *Levi Strauss & Co. v. Blue Bell, Inc.*, 200 USPQ 434 (N.D.Ca.1978), *aff'd*, 632 F.2d 817, 208 USPQ 713 (9th Cir.1980). Following an outcome favorable to Levi, the Examiner passed Levi's application to publication on July 28, 1981.

Genesco filed notice of opposition on September 23, 1981, claiming that a tab was in such common use on shoes by others, and by itself, that the tab lacked distinctiveness and was, in any event, incapable of functioning as a trademark as defined in Section 45 of the Lanham Act, 15 U.S.C. § 1127.

Relying on hundreds of acts by others and deposition statements of Levi's witnesses indicating use of a tab by others on shoes before and after Levi's April 15, 1975 claimed date of first use, Genesco filed a motion for summary judgment, alleging absence of material fact issues and its entitlement to judgment as a matter of law. Four months later, under a PTO order, Levi filed a memorandum alleging the presence of "an enormous number of genuine issues of fact": (1) Is a tab "common"; (2) Is it "nondistinctive"; (3) Is it "ornamental"; (4) Is it a "non-trademark 'identification device'"; (5) Has it been "used extensively by others"; (6) Does it possess "secondary meaning"; (7) Is it "functional"; and (8) was a presumption of distinctiveness created by use on "related goods".

Months after the submission of Levi's memorandum, Genesco filed three rebuttal affidavits stating that certain of the advertisements it relied on related to goods actually sold. Levi moved to strike those affidavits, but the Board accepted them.

The Board granted Genesco's motion for summary judgment on August 31, 1983.

## OPINION

We deal here only with registration, and only with a protruding plain tab visible on shoes when the shoes are worn. The sole question as presented to the Board was whether Levi was entitled to register a tab as a trademark for shoes, regardless of the color of the tab, its location on a shoe, or the presence or absence of a word or wording on the tab. The answer to that question must be determined on the record.

Levi misconstrues the nature and effect of this opposition proceeding. It argues at length respecting its freedom to sue "infringers" of its rights seriatim and to forgo such suits until this proceeding is terminated, and points to a lack of proof that it has acquiesced in "infringement" of its rights by others or has abandoned its rights in the

tab.[1] Levi speaks repeatedly of its loss of right to use the tab, of others' claims of ownership of the tab, and of the abhorrence the law would have of a "forfeiture" of its rights in the tab it has "used for years". None of those arguments and assertions relates to the present proceeding. All are simply irrelevant if the record reflects no fact issue material to the question of whether Levi has created a right in the first place to the particular registration here sought.

Like all good laws, those relating to trademarks are primarily focused on the public interest. The law looks to the pocketbook interests of trademark owners, rather than to a government agency, as the genesis of enforcement efforts, and to the common interest of the trademark owner and the public in the prevention of purchaser confusion. In respect of registration, there must be a trademark, i.e., purchasers in the marketplace must be able to recognize that a term or device has or has acquired such distinctiveness that it may be relied on as indicating one source of quality control and thus one quality standard. When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances. Though the parties assert a variety of equitable and individualized concerns that may be applicable in an enforcement proceeding, the controlling factor in considering the present application for registration must be that of the purchasing public's perception in the marketplace as reflected in the record before us.

The Trademark Rule of Practice, 37 C.F.R. § 2.116(a), makes Rule 56, Fed.R. Civ.P., applicable to all inter partes proceedings before the Board. Rule 56 provides, in pertinent part:

(e) *Form of Affidavits; Further Testimony; Defense Required.*

... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

One of our predecessor courts has previously endorsed the Board's grant of summary judgment where "a full trial ... is unnecessary because the essential facts necessary to decision of the issue can be adequately developed by less costly procedures, as contemplated by the FRCP rules here involved, with a net benefit to society." *Exxon Corp. v. National Foodline Corp.*, 579 F.2d 1244, 1246, 198 USPQ 407, 408 (CCPA 1978); *Pure Gold, Inc., v. Syntex (U.S.A.), Inc.*, 739 F.2d 624 (Fed.Cir. 1984). Caution is required to preserve substantive rights, if any there be, of the adverse party, but the grant is nonetheless entirely appropriate where no genuine issue of material fact exists, and the law is such that summary judgment will avoid a "useless trial". *U.S. Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 157 USPQ 627 (CCPA 1968) citing 6 *J. Moore's Federal Practice* § 56.15[3] (2d ed. 1966); *Pure Gold, supra.*

---

1. Levi's brief emphasizes its difficulties in attempting to foreclose use of a protruding tab by others. It says some of its threats to sue users of the tab on shoes have resulted in cessation of the use involved, and others have not. It admits that some users have succumbed while continuing to deny the validity of its threats. It says there are at any given time some 500 "infringers". Genesco cites testimony that the use of a protruding tab has been recognized and adopted by numerous manufacturers of a variety of goods as a convenient means of attaching names and word marks.

Elimination of "infringements" is a matter for the courts, not the PTO, and the mere assertion that all other users are infringers cannot substitute for the required showing of specific facts in support of a potential finding that a plain tab on shoes has acquired distinctiveness as an indication of a single source or quality standard for shoes.

Levi's mere assertion that eight fact issues exist is insufficient to avoid summary judgment. Argument and assertion of counsel cannot substitute for factual statements under oath that establish a genuine material issue of fact. As this court recently said in *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir. 1984):

> [T]he court may not simply accept a party's statement that a fact is challenged. *Union Carbide Corp. v. American Can Co.*, 724 F.2d at 1571, 220 USPQ at 588 [Fed.Cir.1984]. The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.

Levi has failed to establish on the present record an evidentiary conflict meriting expenditure of further resources in this proceeding to determine its right to the registration sought. Levi's response to the motion merely attacked some of the evidence relied on by Genesco; it did not allege "specific facts showing that there is a genuine issue for trial". Rule 56(e) Fed. R.Civ.P.

Levi's brief energetically challenged what it calls "hearsay affidavits" of Rihtarchik and Henderson, two paralegal employees of Genesco who collected hundreds of advertisements in footwear industry publications of other manufacturer's shoes bearing a protruding tab. Levi's attack, however, goes only to the weight to be accorded that evidence. It raises no genuine issue of material fact. For example, Levi emphasizes in its brief here that a witness "admitted" that about one-third of the shoes shown in the advertisements of foreign manufacturers and one-tenth of those of U.S. manufacturers are never actually sold, while blithely ignoring its recognition thereby of the corollary implication, i.e., that two-thirds of the former and nine-tenths of the latter *are* sold. The affidavits are probative of others' use of a tab in advertising. They are admissible for what they show on their face.

Levi's response to the motion argued that the advertisements did not establish that shoes with the tab were actually sold. Genesco then submitted affidavits identifying sales of some of the advertised shoes. On appeal, Levi strenuously attacks the Board's acceptance of those late-filed affidavits on the ground that it could not cross-examine the affiants, while Genesco says there is no requirement for cross-examination. The Board indicated that its acceptance was based on the view that the affidavits were merely "rebuttal" of Levi's allegations. In that it was wrong. The affidavits were directed to actual sales, an evidentiary area different from that reflected in the advertisements. Nonetheless, Levi's attack is sterile in view of the evidence of its own witnesses, who admitted use by others of the tab on shoes sold before Levi's claimed date of first use and concurrently with Levi's use thereafter.

Admissions of Levi's corporate officers and licensees and Levi's internal documents established widespread and common use of a tab device by others in the shoe industry before,[2] during, and after Levi's claimed date of first use. Levi's brief on appeal makes no effort whatsoever to deny that adverse circumstance, but simply argues that all such uses are "infringements" and should therefore be discounted. That ar-

---

**2.** Levi's brief cites its witness Flipper's testimony that it first licensed use of a tab on shoes in 1954, Exhibit 4, a copy of Levi's Registration No. 659,374, issued March 11, 1958, and a 1955 advertisement in "Seventeen" magazine. Levi describes the registration as being "for the TAB on shoes". The Board noted but disregarded that evidence and Genesco ignores it entirely in its brief. Forced to a fruitless foray into the record, this court finds that the five year license was not renewed, a section 8 affidavit was not filed, and the registration was for the word "LEVI'S", not for "the TAB device" which is nowhere shown or mentioned in the registration. At no time did Levi seek to amend the date of first use claimed in its application. Trademark Rule of Practice, 37 C.F.R. § 2.71. It cannot do so now by a mere assertion in its brief.

gument is, however, irrelevant where, as here, use by others occurred since before Levi's claimed first use and a question is presented as to whether the tab acquired distinctiveness through an extended period of substantially exclusive and continuous use by Levi. *In re Hehr Manufacturing Co.*, 279 F.2d 526, 126 USPQ 381 (CCPA 1960); *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 1320, 209 USPQ 40, 43 (CCPA 1981).

A tab per se is inherently nondistinctive; one seeking to register it as a trademark therefore bears the burden of showing secondary meaning under Section 2(f). Though Levi's application is for registration of an orange tab (the drawing is lined for orange and the application contains no disclaimer of color), Levi admits that it has used tabs of varying colors and asserts a right to register the tab unrestricted to any particular color. Similarily, Levi does not rely on placement of the tab at any particular location on the shoe. If the tab were of a particular color and particularly located, however, Levi would still be required to show that it had acquired secondary meaning as a trademark. *Application of Kotzin*, 276 F.2d 411, 125 USPQ 347 (CCPA 1960); *Application of G. LeBlanc Corp.*, 429 F.2d 989, 166 USPQ 561 (CCPA 1970).

The Board properly rejected Levi's reliance on the outcome of *Levi Strauss & Co. v. Blue Bell, Inc.* 632 F.2d 817, 208 USPQ 713 (9th Cir.1980). That case involved an entirely different fact pattern. Levi first used the mark there involved in 1936 on pants, and its use was exclusive for many years thereafter. The tab had been consistently used in a particular location. Those all important fact differences

destroy relevancy of the outcome in *Blue Bell* to the decision required in this case.[3]

The strength of the tab as a trademark for pants might be relevant if there were evidence establishing public awareness and transference of its trademark function to related goods. That issue is not, however, before us. There is no such evidence and Levi's mere assertion of a possibility of such transference does not raise a genuine issue of material fact. Levi cites *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), but fails to relate the factors set forth in that case to the material facts of this case, as Rule 56 requires.[4] The record establishes that Levi's use of a tab on shoes has been neither first nor exclusive, and that Levi's response to the motion raises no issue of material fact in relation to the acquired distinctiveness required for registration under Section 2(f). Accordingly, the decision of the Board is affirmed.

AFFIRMED.

---

**3.** Levi also cites *Levi Strauss & Co. v. Blue Bell, Inc.*, 732 F.2d 676, 221 USPQ 525, *ordered reheard en banc*, 734 F.2d 409 (9th Cir. May 31, 1984).

**4.** At oral argument, counsel indicated that no opportunity for submission of survey evidence had been provided. In a post-hearing submission, Genesco points to the four months following service of the motion as sufficient time to obtain such evidence and to the testimony of Levi's Mr. Kurtz that he knew of no evidence

that would indicate that a consumer seeing a tab on a shoe would assume that the shoe was a product of a single anonymous source, or of the same source as that of pants that bear Levi's tab on a rear pocket. Levi cites Genesco advertisements associating pants and shoes and Genesco ignores the citation in its brief. Because that citation supplies no factual basis for determining the public perception of plain tabs on shoes, it fails to meet the requirements of Rule 56(e) Fed.R.Civ.P.