THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
April 29 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Primo Water Corporation

————

Serial No. 78684820

————

Michael A. Tobin of Kennedy Covington Lobell & Hickman, LLP for Primo Water Corporation.

Stephanie M. Ali, Trademark Examining Attorney, Law Office 109 (Dan Vavonese, Managing Attorney).[1]

————

Before Seeherman, Bergsman and Wellington, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Primo Water Corporation has appealed from the final refusal of the Trademark Examining Attorney to register the mark shown below for bottled drinking water.[2]

---

[1] A different Examining Attorney examined the application; the file was assigned to the present Examining Attorney at the time the brief was to be prepared.

[2] Application Serial No. 78684820, filed August 3, 2005, based on Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b) (intent-to-use).



The application contains the following description of the

mark, as amended:

> The mark consists of the placement and
> orientation of identical spaced indicia
> on a water bottle having a handle,
> namely the placement of indicia on one
> side of the handle and the placement of
> identical indicia on the other side of
> the handle in inverted orientation.
> The indicia can be text, graphics or a
> combination of both.  The dotted
> outline of the bottle and the indicia
> is not a part of the mark but is merely
> intended to show the placement of the
> mark.  The dotted outline of
> Applicant's logo does not constitute a
> portion of the trademark of this
> application but instead merely
> illustrates indicia.

It is clear, from both the dotted outline of the bottle in

the drawing, and the photographs submitted by applicant of

the actual bottle, that the container is a large water

2

bottle that would be used in a water cooler/water dispenser.

In the first Office action the Examining Attorney refused registration on two bases: 1) the proposed mark is a nondistinctive configuration of the packaging for the goods and would not be perceived as a mark, Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052 and 1127; and 2) applicant seeks registration of more than one mark in its application, Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§1051 and 1127.  Prior to applicant's responding to the first Office action, the Examining Attorney issued a second Office action in which she withdrew the refusal that the mark is a nondistinctive configuration.[3]  The refusal in the final Office action is

---

[3]  The Examining Attorney did not provide a reason for withdrawing this ground of refusal.  Presumably she did so because the application is based on an intention to use the mark, rather than on actual use, and she believed that whether or not this ground of refusal was appropriate could not be adequately determined until applicant submitted specimens of use of its mark with the filing of an amendment to allege use or statement of use.  See TMEP §1202.02(e) (If the mark comprises product packaging trade dress for goods or services, generally no refusal based on lack of inherent distinctiveness will be issued in an intent-to-use application until the applicant has submitted specimens with an amendment to allege use or a statement of use).
We also note that the Examining Attorney has stated, as the last sentence of the argument section of her brief, "Moreover, the applicant has failed to establish the presence of a mark that serves as a source-identifier of specific goods under Trademark Act Section 45, 15 U.S.C. §1127."  Applicant takes issue with this statement in its reply brief, pointing out that the Examining Attorney had withdrawn the refusal based on the

only that applicant seeks registration of more than one mark in its application. Thus, the only issue before us on appeal is whether the application is for more than one mark because, according to the Examining Attorney, it contains a changeable or "phantom" element.

An application must be limited to only one mark. 15 U.S.C. §1051(a)(1); Trademark Rule 2.52. Further, a mark that contains a changeable or "phantom" element is considered to be more than one mark. See In re International Flavors & Fragrances Inc., 183 F.3d 1361, 51 USPQ2d 1513 (Fed. Cir. 1999); TMEP §1214.01.

It is the Examining Attorney's position that an element of applicant's mark--identical, spaced indicia which "can be text, graphics or a combination of both"--is a changeable or phantom element. Applicant, on the other hand, argues that "the relative placement and orientation of identical indicia on a bottle of drinking water--not the indicia itself--can constitute a protectable trademark." Brief, p. 2.

In International Flavors, the applicant sought to register, inter alia, LIVING XXXX FLAVORS and LIVING XXXX FLAVOR as trademarks for essential oils and flavor

_____

packaging being non-distinctive. We agree with applicant that this issue is not before us.

4

substances for use in the manufacture of various products, including flavored foodstuffs.  The XXXX denoted a specific herb, fruit, plant or vegetable, for example, LIVING GREEN BELL PEPPER FLAVORS and LIVING STRAWBERRY FLAVOR.  The Court affirmed the Board's finding that, by including phantom elements in the marks, the applicant sought to register multiple marks, and therefore violated the one mark per application requirement of the Trademark Act.

As the Court discussed in International Flavors, a primary purpose of registration is to provide notice to potential users of the same or a confusingly similar mark, and that to serve this purpose, the mark, as registered, must accurately reflect the way it is used in commerce so that someone who searches the registers of the USPTO for the mark, or a similar mark, will locate the registered mark.  The Court further stated, at 51 USPQ2d 1517-18, that "phantom" marks with missing elements "encompass too many combinations and permutations to make a thorough and effective search possible.  The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration."

5

Phantom elements in marks, as indicated in Section 1214 of the Trademark Manual of Examining Procedure, generally involve a date (usually a year), a geographic location, or a model number that is subject to change. Another example of a phantom mark is found in Cineplex Odeon Corp. v. Fred Wehrenberg Circuit of Theatres Inc., 56 USPQ2d 1538 (TTAB 2000), where the mark at issue was "----SHOW," (three broken lines followed by a hyphen and then the word Show). The broken lines were to indicate a telephone prefix that would vary, and therefore this was considered a phantom element. The applicant claimed no right to the telephone prefixes represented by the broken lines. And, as indicated above, in International Flavors the phantom element was the name of an herb, fruit, plant or vegetable.

In the present case, rather than trying to obtain a registration that would merely cover a change in a year or a geographic location or a descriptive fruit flavor, applicant is, in effect, attempting to cover *any* material that might appear on a label or the like that is used on a water bottle. Although applicant states that it wishes to obtain protection for only the placement of indicia on either side of a water bottle, and the use of identical, inverted indicia, the fact is that applicant, in effect, is

6

attempting to obtain exclusive rights to all labels and the like that would be identical inverted versions of each other. Therefore, all the material displayed, whether text or graphics or a combination thereof, would be a phantom element.

As noted, the Court and this Board have found even a relatively minor, descriptive or disclaimed element of a mark that is changeable to be a phantom element and therefore have found the applied-for mark to constitute more than a single mark. Here, applicant is attempting to obtain protection for a mark where all the text and graphic indicia is changeable. Since even minor changeable elements are sufficient to constitute phantom elements and therefore to preclude registration, certainly applicant's proposed mark, which describes *any and all* sets of text and graphics that are identical and inverted copies, contains a phantom element, and the applied-for mark is not registrable because it encompasses more than a single mark. Although the unspecified material that is encompassed by applicant's description of its mark is more extensive than the phantom elements in other marks, it is equally unregistrable.

In this respect, this case is similar to In re Upper Deck Co., 59 USPQ2d 1688 (TTAB 2001), in which the

applicant sought to register a hologram device for trading cards. The description of the mark stated that neither the size nor the shape of the hologram device, nor any content shown within the hologram device, nor the positioning of the hologram device on the trading card, was claimed as a feature of the mark. The Board found that the attempt to register a hologram which may have a myriad of shapes, sizes, contents and the like encompassed an even larger number of combinations than the XXXX-containing word marks in <u>International Flavors</u>. The Board also found that applicant was attempting to register an idea or concept, rather than a single mark, i.e., the presence of a hologram on a trading card. In the present case, applicant is also attempting to register a concept, the use of indicia on a water bottle that will be in an upright and readable position on the bottle whether the bottle is sitting on its base, prior to use, or when the bottle is upended and placed in a water cooler.

Applicant has argued, brief, pp.3-4, that its mark consists of four elements:

> the *placement* of indicia on a water
> bottle having a handle (i.e., placement
> of indicia on each side of a handle;
>
> the *orientation* of indicia (i.e., the
> indicia on each side of a handle is

> orientated inverted from the indicia on
> the other side of a handle);
>
> the *identicality* [sic] of indicia
> (i.e., indicia on each side of a handle
> is identical); and
>
> a *space between* the indicia.

Although applicant states that its mark does not consist of any particular indicia, two of these elements, the inverted form of the text and graphics, and the "identicality" of the text and graphics, are in fact graphic/text indicia, rather than the mere placement of indicia.[4]  In fact, because the placement of a label or indicia on opposite sides of a bottle used in a water cooler would be a normal method of identifying the source of the bottled water, it is the indicia itself, and the fact that they are identical but inverted copies of each other, that must be considered a significant part of the mark.  In other words, the (varying) indicia must be viewed by consumers before they

---

[4]  Two of these elements, the placement of indicia on either side of a water bottle, and the space between the sets of indicia, go to the placement of the mark.  We acknowledge that the placement of indicia can function as a trademark, although we point out that generally the location of indicia will not be found to function as a trademark without a showing of acquired distinctiveness.  See In re Levi Strauss & Co., 165 USPQ 348 (TTAB 1970), in which a tab located in a specific place on particular goods was found registrable under Section 2(f) of the Act.  See also, Levi Strauss & Co. v. Genesco, Inc., 742 F.2d 1401, 222 USPQ 939 (Fed. Cir. 1984), aff'g 219 USPQ 1205 (TTAB 1983) (applicant sought to register orange tab protruding from seam of shoe as a trademark, opposition sustained because the proposed mark had not acquired distinctiveness).

can perceive the repetition and inversion elements of applicant's mark. And, because applicant's proposed mark does not consist of particular indicia, but can encompass any text or graphic material as long as it is presented in identical inverted versions, applicant's proposed mark contains a phantom element.

In Upper Deck, the applicant contended that because, inter alia, the content shown within the hologram was not claimed as part of its mark, it could not be considered a changeable feature of its mark. However, the Board was not persuaded by this argument, 59 USPQ2d at 1690-91: "While applicant may argue that there are no missing or changeable elements in its mark as described, there are clearly missing or changeable elements insofar as the images presented to the public are concerned." So too, in the present case, the indicia which will appear on the water bottle containers, although not specified in the application, will be viewed by consumers.

Applicant argues that because many different things can be protected as trademarks, e.g., any word, name, symbol, or device or combination thereof, as set forth in Section 45 of the Trademark Act, its applied-for mark is registrable as a trademark. We do not dispute the definition of a trademark, and we also recognize that many

10

different symbols, including a particular sound and a particular scent, have been registered as trademarks. See, for example, In re General Electric Broadcasting Company, Inc., 199 USPQ 560 (TTAB 1978) (sound of ship's bell clock capable of indicating source and registrable on Principal Register upon showing of acquired distinctiveness); In re Clarke, 17 USPQ2d 1238 (TTAB 1990) (scent of plumeria blossoms registrable as a mark for thread and yarn). However, the issue before us is not whether applicant's proposed mark functions as a mark or is capable of indicating source. As noted previously, the Examining Attorney withdrew the refusal based on the ground that the matter sought to be registered is not distinctive and would not be perceived as a mark. We are concerned here only with whether applicant seeks to register more than one mark in its application, and that issue is separate from the question of whether applicant's proposed mark is distinctive and functions as a mark.

Applicant has noted that a primary concern of the Court in International Flavors, in finding that marks containing phantom elements are not registrable, is that the registration of phantom marks would not provide proper notice to other trademark users because they would not allow for a thorough and effective search. Applicant

asserts that in this case there is no such concern because in the first two Office actions the Examining Attorney included the statement that a search of Office records revealed no similar registered or pending mark that would bar registration under Section 2(d) of the Trademark Act. It is clear from both the search done by the Examining Attorney, the parameters of which are in the file, and the Office actions that were issued, that the Examining Attorney's statement about other marks that would bar registration was directed solely to the general configuration of applicant's mark, and not to the virtually unlimited combinations of text and graphics that is encompassed by applicant's description of its mark. In any event, we need not get involved in a consideration of the adequacy of the search conducted by the Examining Attorney, or her comments. The Board's responsibility is to determine whether the mark which is the subject of the application provides adequate notice to competitors who wish to adopt a mark for bottled drinking water or related goods, and whether the mark applicant seeks to register will provide the public with notice of the mark's content in order to make an exact and thorough search possible. See International Flavors, 51 USPQ2d at 1517.

12

Finally, we note that in its appeal brief applicant points to three third-party registrations, previously made of record, which it asserts contain unspecified indicia within the description of the mark, but not in the drawing of the mark.  In its reply brief applicant states that it "does not 'rely' upon three previous registrations that include changeable indicia."  Reply brief, pp. 2-3.  On the possibility that applicant still considers these third-party registrations to support its position, we will discuss them briefly.  We do not consider <u>three</u> registrations to show a USPTO "history of allowing registration of trademarks in which unspecified indicia is contained within the description of the trademark but not included within the drawing or claimed trademark."  Applicant's brief, p. 5.  Further, Registration No. 1917692 (which has been cancelled) issued in 1995, prior to the Board's decision in <u>International Flavors</u> in 1998, see 47 USPQ2d 1314, and prior to the Federal Circuit's decision in 1999.  In fact, the Board recognized in its decision that the Trademark Examining Operation had taken contrary positions on the registrability of marks which contain phantom elements.  Thus, it cannot be said that there was a consistent policy up to that point.  In any event, it is well established that even if some prior registrations have

some characteristics similar to the applicant's, the USPTO's allowance of such prior registrations does not bind the Board.  In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

In conclusion, we find that applicant's proposed mark contains a phantom element, namely, text and graphic material or a combination thereof that are identical but inverted copies of each other.  Because the text and graphic material or a combination thereof is a changeable element, the application is for more than a single mark, and thus registration is prohibited pursuant to 15 U.S.C. §1051(a)(1) and Trademark Rule 2.52.

Decision:  The refusal of registration is affirmed.