47 CCPA

**Application of Tobias KOTZIN (A-1 Manufacturing Co., Assignee, Substituted).**

**Patent Appeal No. 6518.**

United States Court of Customs and Patent Appeals.

March 30, 1960.

412

Flam and Flam, John Flam, Los Angeles, Cal. (Boris Haskell of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge C. WILLIAM KRAFT [1]

RICH, Judge.

This appeal is from the decision of the Assistant Commissioner of Patents affirming the examiner's refusal to register appellant's alleged trademark for trousers on the Principal Register. The application is Serial No. 21,381, filed December 20, 1956.

What is sought to be registered as a trademark is shown in the application drawing to consist of an oblong piece of goods secured at one of its longitudinal edges by being stitched into the side seam on the outside of the trousers and overlying the waistband area. In addition to the drawing the application contains a description of the mark reading as follows:

[1] United States District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'CONNELL, pursuant to provisions of Section 292(d), Title 28 United States Code.

"The trademark consists of a woven rectangular tag distinctively located by being vertically disposed and having one longitudinal edge inserted beneath and permanently attached by a seam or pleat across the waistband of the trousers, the label extending laterally of the seam or pleat, substantially as shown in the accompanying drawing."

The specimen filed with the application shows the same kind of tag, similarly sewed into a seam, adjacent to but not the same seam shown in the drawing, and bearing certain writing which appears to be woven into the label. The writing exposed to view in the reproduction in the record consists of an oval at the upper or left end of the label forming a dark background for light matter reading "A-1 MFG Co". Below or to the right, the label is filled by the following:

"Angeles ®
P E G G E R
California Slacks"

According to the opinion below, there is wording on the other side of the label (facing the trousers) reading, "First and Finest—A-1 Mfg. Co. Los Angeles."

None of this writing is included in the application and it is evident that what appellant wishes to register as a trademark is a cloth label of elongated rectangular or oblong shape—which, we may say, is a shape common to clothing labels—sewed to trousers at a particular location. It is further significant that the specimen shows that in the actual use of this alleged mark it has the function of carrying the trademark "Pegger" and the other label data above described. At least no separate use, apart from this function, of what is sought to be registered is of record.

The examiner refused registration "in view of the decision rendered by the Assistant Commissioner in the appeal of applicant's prior application[s] serial nos. 657,143 and 657,144 (111 USPQ 161)." He said, "This case appears to present the same situation * * * and the decision in those appeals is considered to be controlling * * *." The Assistant Commissioner had there ruled in two appeals, one of which involved an issue seemingly identical with the issue here, that

"The location of a label is not and cannot be a trademark under the statutory definition.

*   *   *   *   *   *

"The subject matter of the respective application does not *and cannot* perform the function of indicating origin, and it is therefore unregistrable." (Emphasis ours.)

On the present appeal the Assistant Commissioner's decision affirming refusal to register was based on her prior decision from which she quoted and said, "The holding is equally applicable here." See 118 USPQ 465, 466. While the examiner here merely relied on the Commissioner's ruling in the prior cases, in those cases the examiner had refused registration on the ground that "the method or manner of applying the label to a specific place on the garment would not be regarded by the purchasing public as an indication of commercial origin of the goods to distinguish them from similar goods of others."

██ What appellant wants to register, as described in its application, is, in a sense, a legal fiction. He has attempted to sever *from what he actually uses as a trademark,* and to register it, something he has never used as a trademark; for, so far as the record before us shows, the distinctively located, woven rectangular "tag" has never been used except as the vehicle for *other* trademarks, indicia of origin, and descriptive matter. In other words, appellant would have us consider as a trademark his *labels,* stripped of their written matter, when attached to the trousers in a particular manner and location. When so stripped, the labels are mere blanks, which distinguishes them from labels having some visible design.

██ A single affidavit is of record, made by a men's and boy's apparel re-

tailer of 20 years experience, who says he first observed appellant's labeling practice, as herein described, seven years prior to his deposition. He says that he had never seen labels so located on trousers before and that by his close attention to customers he was well acquainted

"with the consumers' actual identification of said products among similar merchandise of the same general class by means of the unusual and distinctive manner in which said products are labeled, namely, the location of the label in a vertical position sewn in or near the upper right sideseam of trousers at approximately the location of the waistband thereof."

He expressed his personal view that the label so located "is itself the distinctive and distinguishing mark for trousers of said company, separate from any wording on said labels, or any other trademarks used by said company."

It would be surprising indeed if appellant could not obtain one such affidavit from one of his good customers of ten years standing, as affiant was. We think it has almost no probative value and is about on a par, as evidence, with the argument in appellant's brief. The Patent Office solicitor's brief aptly characterizes it as "a mere conclusory statement, representing no more than affiant's opinion, * * * inherently incredible, and hence is entitled to no weight." It recites no supporting facts, gives no idea of how many customers identify the merchandise by label location without regard to its wording, or even says that average purchasers do so.

The Assistant Commissioner said in the prior opinion (111 USPQ 161) which was quoted and relied on herein (118 USPQ 465):

"The 'distinctive location' of a label is not a word, name, symbol or device adopted and used by one manufacturer or merchant to identify his goods and distinguish them from those of others. The location of a label is not and cannot be a trade-

mark under the statutory definition."

We presume, in the absence of a statutory citation, that the "definition" referred to is the paragraph in Section 45 of the Trade-Mark Act of 1946 (15 U.S.C.A. § 1127) which reads:

Trade-mark. "The term 'trademark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

In view of the use of the word "includes" in that paragraph, of the use of the word "means" in section 45 in defining other terms and of the language used in section 2, 15 U.S.C.A. § 1052, we do not believe that section 45 was intended to restrict registrable trademarks to those complying with the above-quoted paragraph or to be an all-inclusive "definition." We believe that anything recognized as a trademark prior to the 1946 Act would still be so considered, notwithstanding section 45. Furthermore, while granting that a "location" per se cannot be a trademark, we do not see why a particular "tag" (which is what the application calls for), particularly located on particular goods, cannot indicate origin. For these reasons we think that the Assistant Commissioner's opinions go too far if they are intended to hold that what is sought to be registered can under no circumstances perform the function of indicating origin. We have in mind appellant's complaint, made at oral argument, that it has been precluded from obtaining registration under section 2(f) by the decisions, the latter section requiring that the mark has "become distinctive of the applicant's goods in commerce," or even registration on the Supplemental Register since section 23 restricts such registration to marks which are "capable of distinguishing the applicant's goods." 15 U.S.C.A. § 1091. We do not think that the mark sought to be registered is inherently incapable of distinguishing appellant's goods and

to this extent we are constrained to disagree with the decision below.

Furthermore, we do not see why the mark sought to be registered could not be considered to be either a symbol or device or a combination thereof.

 On the other hand, it does not necessarily follow that the mark sought to be registered is, on the present record, registrable on the Principle Register. Indeed, it is our opinion that it is not so registrable. For reasons already stated, we do not regard the single affidavit of record as sufficient to support registration under section 2(f). So long as the "tag" is, as the specimen shows, more accurately described as a label, bearing a word trademark, descriptive indications of origin, and descriptions of the goods, we do not believe that the purchasing public would regard the described location of this label as an indication of the origin of the goods, as least until its collective mind has somehow been conditioned to think that it is. The record shows nothing of this kind. The very prominent writing on the label quite outweighs, in our judgment, the supposed significance of its point of attachment as a trademark, submerging the latter to the point of insignificance. If there were no visible writing on the tag so that its presence in the side seam near the waistband seemed to be arbitrary, we might feel otherwise. The public is accustomed, however, to seeing printed and woven fabric labels stitched to shirts, suits, coats, slacks, ties, shoes, pajamas, hats, caps, cushions, mattresses, and furniture in a variety of locations and in the absence of convincing evidence we see no reason why purchasers would think that appellant's label location has any significance at all.

For the foregoing reasons and with the qualifications we have expressed, the decision refusing to register is *affirmed*. If appellant can support an application to register under section 2(f), he should have the opportunity to do so. The case is remanded for further proceedings consistent with this opinion.

Remanded.

WORLEY, Chief Judge (concurring in part).

I find nothing in the record to justify a remand to the Patent Office for the purpose of considering registration under Section 2(f). It seems to me, at least in the interest of orderly procedure, that we should either affirm or reverse the decision appealed from. In my opinion the decision should be affirmed.