**LEVI STRAUSS & CO.,**
**Plaintiff/Appellee,**

v.

**BLUE BELL, INC., Defendant/Appellant.**

**No. 78–3119.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Nov. 13, 1980.

Philip F. Zeidman, Brownstein, Zeidman & Schomer, Washington, D.C., on brief; Donald A. Kaul, Washington, D.C., for defendant/appellant.

John P. Sutton, Neil A. Smith, San Francisco, Cal., on brief; M. Laurence Popofsky, San Francisco, Cal., for plaintiff/appellee.

Before MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals, GOODWIN and BOOCHEVER, Circuit Judges.

MARKEY, Chief Judge.

Blue Bell, Inc. (Wrangler) appeals from a final judgment of the District Court for the Northern District of California in this suit for trademark infringement and unfair competition brought by Levi Strauss & Co. (Strauss). We affirm.

### Background

In 1936, Chris Lucier, a Strauss employee, conceived the idea of a permanent identifier for pants, visible while the pants were being worn. The permanent identifier was a folded ribbon sewn with its ends captured in the seam of a rear patch pocket. For convenience, the identifier is here called the "pocket tab".

Strauss adopted and used the pocket tab as a trademark in 1936. Over the ensuing 44 years, it has continuously and widely used the mark, most often in this form:

Strauss has obtained and maintained six federal trademark registrations covering its pocket tab,[1] and has an application pending for a seventh registration.[2]

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. (1) The pocket tab colored red, Reg. No. 356,701.
   (2) The pocket tab carrying "LEVI'S", Reg. No. 516,561.
   (3) The pocket tab colored red and located in the left–hand vertical seam of the right rear patch pocket, Reg. No. 577,490.
   (4) The pocket tab colored white and located at the left–hand vertical seam of the right rear patch pocket, Reg. No. 720,376.

---

2. See note 2 on page 819.

In 1969, Wrangler introduced its HONDO pants line, featuring an inset (as opposed to patch) back pocket. A horizontally disposed, projecting label sewn to the pocket at its top, carried "HONDO". Strauss complained to Wrangler that use of that label infringed its trademark rights. Wrangler disagreed and Strauss sued.

### District Court Proceedings

Suit was filed on May 1, 1970, charging Wrangler with federal trademark infringement and unfair competition. In November, 1974, Strauss moved to dismiss the action as moot, Wrangler having discontinued its HONDO line. Wrangler successfully opposed dismissal, maintaining that it had a continuing interest in judicial resolution of its right to use an external projecting label on the pocket of its pants.

Bench trial began on October 25, 1977, but just before trial, Wrangler gave Strauss samples of a new line of jeans which it proposed to market.[3] The new line displayed a projecting, folded label with its ends sewn into the seam at the bottom of the right rear patch pocket. The label was horizontally disposed, colored black, and carried "WRANGLER" thereon:

(5) The pocket tab colored black and located at the left-hand vertical seam of the right rear patch pocket, Reg. No. 774,625.
(6) The pocket tab carrying "LEVI'S", colored white, and located at the left-hand vertical seam of the right rear patch pocket, Reg. No. 775,412.

2. The application is for registration of the pocket tab as "a small marker or tab affixed to the exterior of the garment at the hip pocket", regardless of color. The U.S. Patent and Trademark Office examiner rejected the application, but the Trademark Trial and Appeal Board reversed. *In re Levi Strauss & Co.*, 165 U.S.P.Q. 348 (T.T.A.B. 1970). Wrangler op-

To include Wrangler's new line in the suit, Strauss filed a supplemental complaint on October 27, 1977, again asserting trademark infringement and unfair competition. On October 31, 1977, Wrangler filed an answer and counterclaim.

At the conclusion of trial on November 3, 1977, with the salutary recognition that the facts were fresh at hand, the district court rendered its decision in this succinct yet fully adequate opinion from the bench:

I think that the evidence, although I would have doubted at the start of the trial, shows that the free flowing right–rear patch pocket tab has acquired a secondary meaning.

I think that the tab identification can be and was a reasonable basis for trademark registration.

Levi Strauss has registrations which, in my opinion, are valid. However, the tab trademark should be, and is limited to a right–rear patch pocket.

The defendant is guilty of infringement of plaintiff's trademark and unfair competition.

I believe that the evidence indicates that the infringement was designed to capitalize on a market previously developed by Levi Strauss. Therefore, defendant is enjoined from the use of free flowing pocket tabs on the right–rear pocket—patch pocket.

No evidence of money damage has been presented, so no damages are awarded. And no accounting is regarded as necessary and none is noted.

The relief requested by way of the counterclaims is denied.

posed registration. The opposition proceeding has been suspended, pending the outcome of this litigation. The district court's judgment in this case directed the Patent and Trademark Office not to refuse registration on the application and to consider the opposition in light of its findings and conclusions.

3. The courts having no authority to issue advisory opinions, we must assume, from the issuance of an injunction and from the findings below concerning Wrangler's "use" of a pocket tab, that Wrangler made at least one sale or offer for sale of pants bearing a pocket tab.

On July 14, 1978, the court entered 106 findings of fact and 26 conclusions of law, of which these are of particular relevance on this appeal:

*Findings*

44. The pocket TAB has acquired a secondary meaning as identifying Levi Strauss and its products to the public. The pocket TAB can and does distinguish the goods of Levi Strauss from those of others and is distinctive of the goods of Levi Strauss in commerce.

98. Blue Bell's use of the pocket TAB on the WRANGLER pants was designed to capitalize on a market previously developed by Levi Strauss.

99. Blue Bell's use of the WRANGLER pocket TAB on the bottom of the right rear patch pocket on its pants is likely to cause confusion, mistake or deception with the pocket TAB trademark of Levi Strauss.

*Conclusions*

6. Even if effect is not given to incontestability under 15 U.S.C. § 1065, plaintiff's pocket TAB trademark has acquired a secondary meaning in the marketplace and is distinctive of plaintiff's garments in commerce.

7. The pocket TAB device is a proper subject for trademark registration and protection. . . .

22. Defendant's use of the pocket TAB trademark on a rear patch pocket of pants as historically used and registered by plaintiff is likely to cause confusion or mistake or to deceive the public as to the source of association of defendant's pants from or with plaintiff. . . .

23. Defendant has infringed plaintiff's rights in the pocket TAB and unfairly competed with plaintiff by using the pocket TAB in the seam of a right rear patch pocket on pants and such use of the pocket TAB is enjoinable by the Court.

4. Strauss does not appeal the portion of the judgment related to the HONDO ribbon.

On July 14, 1978, the Court entered its judgment, in which it stated that (1) Wrangler had infringed the Strauss trademark and unfairly competed in selling, offering for sale, and advertising pants bearing the WRANGLER projecting label on a right rear patch pocket; (2) Wrangler had not infringed or unfairly competed in selling, offering for sale, or advertising pants bearing the HONDO ribbon sewn to the top portion of a right rear inset pocket,[4] and (3) Wrangler was enjoined from "distributing, selling, offering for sale, or advertising pants bearing a folded cloth ribbon protruding from the seam of the right rear or hip patch pocket of pants".

## OPINION

### *Secondary Meaning*

■ We need not decide whether the Strauss pocket tab device was inherently distinctive at the time of its adoption 44 years ago, for, if it were not, it could nonetheless serve as a trademark, and be protected as such, if it thereafter acquired distinctiveness, a phenomenon referred to as the acquisition of a "secondary meaning". 1 J. McCarthy, Trademarks and Unfair Competition § 15:1 (1973). The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the symbol or device emanate from or are associated with the same source. As recognized in this circuit, "[s]econdary meaning has been defined as *association* nothing more". *Carter–Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). The word "secondary" refers only to second in time, for the additional association–with–source meaning often overtakes the original or first–in–time meaning of the symbol or device.

That a distinctive location and defined shape of a label function as a trademark

may be shown by evidence that buyers recognize the location and shape as an indication of origin. *See Application of Kotzin,* 276 F.2d 411, 414–15, 47 C.C.P.A. 852 (1960). In *In re Levi Strauss & Co.,* 165 U.S.P.Q. 348 (T.T.A.B. 1970), the Trademark Trial and Appeal Board recognized trademark significance in the pocket tab's location and defined shape, the evidence there presented being found sufficient to establish secondary meaning in those features.

■ Whether a symbol or device has acquired secondary meaning being a question of fact, *Norm Thompson Outfitters, Inc. v. General Motors Corp.,* 448 F.2d 1293, 1296 (9th Cir. 1971); *North American Aircoach Systems v. North American Aviation,* 231 F.2d 205, 210 (9th Cir. 1955), *cert. denied* 351 U.S. 920, 76 S.Ct. 709, 100 L.Ed. 1452 (1956), findings regarding that question shall not be set aside unless clearly erroneous. *K–S–H Plastics, Inc. v. Carolite, Inc.,* 408 F.2d 54, 58 (9th Cir.), *cert. denied* 396 U.S. 825, 90 S.Ct. 69, 24 L.Ed.2d 76 (1969). Fed.R.Civ.P. 52(a).

■ The district court received copious evidence, direct and circumstantial, on the use and recognition of the pocket tab mark. Use of the mark continuously for 44 years, sales of products bearing the mark of $500,-000,000 in the one year before suit, a use on 500,000,000 garments between 1969 and 1977, and widespread advertising directed to the mark, were among the facts of record. Based on that and further evidence, the court entered findings 16 through 45, in support of its conclusion 6 that "[the Levi Strauss] pocket tab trademark has acquired a secondary meaning in the marketplace and is distinctive of [Levi Strauss's] garments in commerce". None of the court's findings being clearly erroneous, we shall not disturb that conclusion.

*Likelihood of Confusion*

Secondary meaning and likelihood of buyer confusion are separate but related determinations, the relationship rising from the same evidentiary findings. The stronger the evidence of secondary meaning, the stronger the mark, and the more likely is confusion. *See AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 349 n. 12 (9th Cir. 1979).

■ The present record establishes that Strauss, by extensive use and advertising, built its mark into one which prospective buyers associate with only one seller of pants,[5] and that those buyers, upon observing Wrangler's accused mark on pants, would be likely to assume that those pants were from or somehow associated with that one seller, that is, with Strauss. The evidence of secondary meaning is strong, and the Strauss mark is entitled to a broad scope of protection. We agree with the court's conclusion 22 that Wrangler's use of its projecting label with its ends captured in an edge of a rear patch pocket of pants "is likely to cause confusion or mistake or to deceive the public as to the source of associ-

---

**5.** Wrangler argues disingenuously that Strauss "may not use the trademark laws to obtain a perpetual monopoly on the idea of a projecting pocket label for pants, when the alleged trademark is not limited to any size, color, or precise location of label, or to any wording on the label, simply because [Strauss] was the first to use this type of label". As indicated in the text, the record establishes that Strauss's trademarks rights rest on far more than a "first to use" premise. Wrangler's pejorative use of "monopoly" implies that Strauss's trademark right is harmful and anti–competitive. On the contrary, the pocket tab trademark gives the public a reliable indication of source and thus facilitates responsible marketplace competition.

Wrangler alleges that Strauss is guilty of fraud on the Patent and Trademark Office and unclean hands, that it is guilty of conduct amounting to estoppel, acquiescence, and abandonment of its rights, and that the mark is merely ornamental or functional. The district court entered extensive findings disposing of each of these allegations as unfounded. Those findings are fully supported in the record and are not clearly erroneous.

ation of [Wrangler's] pants from or with [Strauss]".[6]

Wrangler argues that its pants were clearly labeled to indicate source. It asserts that its label prominently carried the word WRANGLER and the pants carried a paper billboard identifying Wrangler as the manufacturer. Therefore, argues Wrangler, a purchaser of those pants would not be likely to be confused into believing that they originated with Strauss. The argument is without merit.

First, nothing of record indicates that the mere presence of Wrangler's word mark avoids a likelihood of confusion. A latecomer who adopts a mark with intent to capitalize upon a market previously developed by competitors in the field (Finding 98) must at least prove that his effort has been futile. *HMH Publishing Co. v. Brincat*, 504 F.2d 713, 720 (9th Cir. 1974); *National Lead Co. v. Wolfe*, 223 F.2d 195, 202 (9th Cir.); *cert. denied* 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955).

Second, Wrangler focuses upon the condition of its pants when sold and limits its argument to "point of sale" circumstances. However, billboards and other point of sale materials are removed by the purchaser and have no confusion–obviating effect when the pants are worn. Wrangler's use of its projecting label is likely to cause confusion among *prospective* purchasers who carry even an imperfect recollection of Strauss's mark and who observe Wrangler's projecting label after the point of sale. It is axiomatic in trademark law that "side–by–side" comparison is not the test. *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 759 (9th Cir. 1978), *cert. denied* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *G. Heileman Brewing Co. v. Independent Brewing Co.*, 191 F. 489, 497 (9th Cir. 1911); *Geigy Chemical Corp. v. Atlas Chemical Industries, Inc.*, 438 F.2d 1005, 1007, 58 C.C.P.A. 972 (1971). Restatement of Torts § 728, Comment b (1938).

### Conclusion

Strauss has established that a substantial number of prospective buyers associate its pocket tab trademark with only one seller of pants, and that Wrangler's use of a projecting label with its ends captured in an edge of a rear patch pocket of its pants is likely to cause confusion, to cause mistake, or to deceive.[7]

We affirm the district court's judgment finding and enjoining trademark infringement and unfair competition.

*AFFIRMED.*

---

**6.** In cases involving likelihood of confusion, the district court's findings on the fundamental underlying facts are reviewable under the clearly erroneous standard. *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443–44 (9th Cir. 1980). *J. B. Williams Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 190 (9th Cir. 1975), *cert. denied* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976). The findings underlying conclusion 22 are not clearly erroneous.

**7.** The parties have argued toward general definitions of Strauss's trademark rights under various hypothetical circumstances. Such definitions must await presentation of an actual case or controversy involving established facts.