**G.H. MUMM & CIE (Societe Vinicole de Champagne Successeurs of New York, Inc.), Appellant,**

v.

**DESNOES & GEDDES, LTD., Cross–Appellant.**

**Nos. 89–1696, 89–1697.**

United States Court of Appeals, Federal Circuit.

Oct. 25, 1990.

Martin J. Beran, of New York City, argued, for appellant. With him on the brief were Laura E. Goldbard and Blum Kaplan.

Robert B. Kennedy, Thomas and Kennedy, of Atlanta, Ga., argued, for cross-appellant.

Before MAYER and PLAGER, Circuit Judges, and SMITH, Senior Circuit Judge.

PLAGER, Circuit Judge.

Appellant G.H. Mumm & Cie (Societe Vinicole de Champagne Successeurs of New York, Inc.) ("Mumm") opposes registration of a mark by Cross–Appellant Desnoes & Geddes, Ltd. ("Desnoes"). The Trademark Trial and Appeal Board ("Board") dismissed Mumm's opposition. Desnoes cross-appeals from a decision of the Board dismissing Desnoes' counterclaim to cancel Mumm's Registration No. 395,907 ('907). As to both dismissals, we affirm.

## I. BACKGROUND

On June 16, 1942, the '907 registration of a mark which included a diagonal stripe, lined for red, was granted to Mumm. The registered mark ('907 mark) is reproduced below:

The original '907 registration was for wine, in U.S. class 47. Under the schedule of classes of goods and services in effect at the time of registration, both still wines and sparkling wines [1] were included in U.S. class 47. 37 C.F.R. § 100.161 (1947); see H. Nims, *The Law of Unfair Competition and Trade-marks* 1127 (1929). Products such as malt beverages and liquors were included in U.S. class 48. *Id.*

The right to use the '907 mark became incontestable, under 15 U.S.C. § 1065 (1988), no later than August 17, 1954 by virtue of a properly submitted affidavit dated May 22, 1954. Mumm has continuously used a red stripe in connection with its product since at least June, 1942. Mumm last renewed its registration of the mark for 20 years from June 16, 1982.

Desnoes markets "Red Stripe" brand beer; the record indicates that it first sold the beer, apparently in Jamaica, in 1934. It has marketed the beer in the United States since 1976, distribution being limited to 28 states. On October 18, 1984, Desnoes filed an application in the Patent and Trademark Office, Serial No. 504,399 ('399), to register the mark shown below:

---

1. The term "sparkling wine" includes champagne, but the term "champagne," although sometimes applied to sparkling wines in general, is more properly reserved for those sparkling wines produced in the Champagne region of France by the Champagne method. *See,* H. Johnson, *The World Atlas of Wine* 106–09 (1977). We refer to non-sparkling wines as still wines.

**1294**

Mumm opposes registration of the '399 mark, arguing that Mumm's diagonal red stripe mark has become so well known to the trade and purchasing public that it indicates origin exclusively with Mumm, and that, as applied to Desnoes' goods, the proposed '399 mark would be likely to cause confusion, to cause mistake, or to deceive, which the statute makes grounds for denial of a registration. 15 U.S.C. § 1052(d) (1988). Desnoes argues that use of diagonal red stripes has become common in the beer and wine trade and that Mumm is unable to exercise control over the use of such a mark. Desnoes also argues that the '907 mark is no longer capable of distinguishing Mumm's goods from the goods of others. Desnoes argues further that Mumm engaged in inequitable conduct involving fraud and unclean hands before the Patent and Trademark Office during the 1982 renewal of the '907 registration and, therefore, the registration should be cancelled.

## II. DISCUSSION

### 1. *Secondary Meaning*

■ Secondary meaning arises when a symbol or device, not inherently distinctive at the time of its adoption, later acquires distinctiveness such that the symbol or device serves as a mark to indicate the source of the associated goods. *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 821, 208 USPQ 713, 717 (9th Cir.1980). A mark that has acquired secondary meaning may serve as a trademark and be protected even if the mark was not distinctive at the time of its adoption. *Id.* at 820, 208 USPQ at 716.

■ Whether or not a mark has acquired secondary meaning is a question of fact to be reviewed under the clearly erroneous standard. *Yamaha Int'l. Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 1581, 6 USPQ2d 1001, 1008 (Fed.Cir.1988). The Board found the '907 mark to be "distinctive" and "a strong mark" for sparkling wine. Desnoes argues that because Mumm now uses the '907 mark in combination with the marks MUMM and CORDON ROUGE, rather than as an unlabeled red stripe, and because others use a stripe on certain still wines, beers and liquors, the '907 mark has lost any secondary meaning it might once have enjoyed and, therefore, Desnoes argues, Mumm has abandoned its mark. *See* 15 U.S.C. 1115(b)(2) (1988). Mumm introduced substantial evidence demonstrating the distinctiveness of the '907 mark. The Board had substantial evidence before it supporting the distinctiveness of the '907 mark. The mere existence of conflicting evidence in the record, even if persuasive, which it is not, does not entitle this court to overrule the Board. We therefore uphold the Board's finding that the '907 mark is distinctive for sparkling wines.

### 2. *Likelihood of Confusion*

"Secondary meaning and likelihood of buyer confusion are separate but related determinations, the relationship arising from the same evidentiary findings." *Levi Strauss v. Blue Bell*, 632 F.2d at 821, 208 USPQ at 717. The gravamen of Mumm's appeal is its belief that confusion in the marketplace is likely to result from use of

the respective marks on champagne and on beer. The issue of likelihood of confusion is a question of law based on the properly found facts. *Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*, 889 F.2d 1070, 1072, 12 USPQ2d 1901, 1902 (Fed.Cir.1989).

In making this determination, courts consider a number of factors, with the significance of each factor in a given case dependent "on the particular circumstances of the respective uses." *Jewelers Vigilance Comm. v. Ullenberg Corp.*, 853 F.2d 888, 893, 7 USPQ2d 1628, 1632 (Fed.Cir.1988). The traditionally recognized factors are:

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing.

(5) The fame of the prior mark (sales, advertising, length of use).

(6) The number and nature of similar marks in use on similar goods.

(7) The nature and extent of any actual confusion.

(8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.

(9) The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).

(10) The market interface between applicant and the owner of a prior mark: (a) a mere "consent" to register or use. (b) agreement provisions designed to preclude confusion, i.e. limitations on continued use of the marks by each party. (c) assignment of mark, application, registration and good will of the related business. (d) laches and estoppel attributable to owner of prior mark and indicative of lack of confusion.

(11) The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12) The extent of potential confusion, i.e. whether *de minimis* or substantial.

(13) Any other established fact probative of the effect of use.

*Application of E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A.1973).

■ Substantial evidence was presented by Mumm regarding the strength of the '907 mark for sparkling wines and by Desnoes regarding the use of stripes and bands, several of them red, on third party still wine, beer and liquor products. No evidence was presented establishing the use of red stripes or bands on sparkling wines other than on champagne from Mumm.

It is true that both beer and wine, including champagne, are frequently sold through the same channels of distribution. It is also true that substantial pricing differences normally exist and actually exist in this case between champagne and beer. Mumm markets its product as a premium good: the purchaser of Mumm champagne can be presumed to be in the market for an upscale item for consumption and to have a reasonably focused need. Desnoes does not market its product as a premium good. These differences weigh against a holding of a likelihood of confusion. *DuPont*, 476 F.2d at 1361, 177 USPQ at 567.

Further, we note that despite over a decade of the marketing by Desnoes of Red Stripe beer in certain of these United States, Mumm was unable to offer any evidence of actual confusion. This too weighs against a holding of a likelihood of confusion. *DuPont*, 476 F.2d at 1361, 177 USPQ at 567.

The Board also noted that the marks themselves are, in fact, different. Mumm's registered mark is of a diagonal red stripe or ribbon extending from the upper left corner of its label to the lower right corner. Desnoes' mark extends from the lower left

of its label to the upper right and is overlaid with the words "RED STRIPE." The Board concluded there was no likelihood of confusion surrounding the contemporaneous use of the respective marks, and we agree.

### 3. *Inequitable Conduct Before the Patent and Trademark Office*

Desnoes asserts that Mumm engaged in inequitable conduct involving fraud and unclean hands before the Patent and Trademark Office when, during the '907 registration renewal in 1982, Mumm submitted partially completed labels to fulfill the 15 U.S.C. § 1059(a) (1988) requirement for filing "a specimen or facsimile showing current use of the mark." Desnoes argues that Mumm's failure to submit a specimen label of the type Mumm affixes directly to the goods, with the words CORDON ROUGE superimposed on the stripe, is an act of inequitable conduct and that Mumm's '907 registration should be cancelled.

The submitted specimens show a diagonal red stripe without any wording. The '907 registration is for a diagonal red stripe. The registration shows no wording. It is undisputed that, in use, the label directly affixed to the goods includes the words CORDON ROUGE superimposed on the stripe; however, the record shows multiple point of sale displays which present the '907 mark without any words superimposed on the stripe.

> This court has held that
>
> [i]f a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the [specimen] attached to the application shows the mark as currently used when, in fact, he knows or should know that [1] he is not using the mark as registered and [2] that the [specimen] attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO.

*Torres v. Cantine Torresella S.r.l.,* 808 F.2d 46, 49, 1 USPQ2d 1483, 1485 (Fed.Cir. 1986). In the present matter, the Board found that Mumm was using the '907 mark as registered at the time of the renewal application.

We agree with Desnoes to the extent that we do not find Mumm's filing of partially completed labels as specimens to be appropriate or good practice. However, this inappropriate action does not go so far as to constitute inequitable conduct before the Patent and Trademark Office (Patent Office). As the Board found, had the words CORDON ROUGE appeared on the specimens submitted, such specimens would have been accepted. Indeed, the original registration of the mark was supported by labels showing the words CORDON ROUGE superimposed on the stripe. The Board found that Mumm had not practiced a fraud on the Patent Office nor did the Board suggest that Mumm came before the Patent Office with unclean hands. On the record before us, we agree.

### III. SUMMARY

We agree with the Board that Appellant Mumm's mark is a strong mark for sparkling wines. We do not extend that view to other products such as beer—Mumm has neither marketed a beer nor registered its mark for beer. The use of stripes and ribbons on other beer and still wine products weighs against Mumm's claim that the '907 mark is strong for all wines and beers.

Applying the *DuPont* standard, we find that Mumm did not present evidence sufficient to show that a likelihood of confusion exists between its '907 mark and the mark contained in Desnoes' '399 application. And while Mumm's handling of the registration renewal in 1982 is not a model of technical nicety we would wish to have emulated, it does not rise to the level of inequitable conduct before the Patent Office.

### IV. CONCLUSION

For the reasons stated, the decision of the Board as to both dismissals is affirmed.

AFFIRMED.