Paper No. 16
CEW

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB          OCT. 27, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Dan E. Rogers
_____

Serial No. 75/013,108
_____

Freling E. Baker of Baker and Maxham for applicant.

Mary E. Crawford, Trademark Examining Attorney, Law Office 102 (Thomas V. Shaw, Managing Attorney).
_____

Before Walters, Chapman and Wendel, Administrative Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:

Dan E. Rogers has filed a trademark application to register the mark GERSON for "providing medical treatment for human illnesses by means of nutritionally based therapy," in International Class 42.  The application, filed October 31, 1995, is based on an allegation of a bona fide intention to use the mark in commerce.

*Procedural and Factual History*

The Examining Attorney refused registration on the ground that GERSON is primarily merely a surname, under Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4). In support of her refusal, the Examining Attorney submitted excerpts of listings for the surname Gerson from the Phonedisc USA database.

In response, applicant, not disputing that GERSON is a surname, stated that Dr. Max Gerson is the individual who developed the nutritionally based therapy, known as the Gerson Therapy, that is the subject of the medical services identified in this application; that Dr. Gerson is deceased; and that Dr. Gerson's heirs assigned to applicant the right to use the GERSON name.[1] Applicant asserted a claim of acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f), by submitting his declaration of continuous use of the mark for at least five years in "international commerce." Applicant acknowledged that the

---

[1] While ownership of the applied-for mark in the United States is not an issue before us, we note that applicant submitted no evidence regarding the nature and scope of the assignment to him. In support of his claim of acquired distinctiveness, applicant submitted evidence indicating that there are several other entities that also use the GERSON name in connection with goods and services the same as or related to applicant's identified services. However, we cannot discern from this record the relationship between these entities and applicant. Thus, as discussed in our decision, we have not considered the evidence of use by these entities to inure to applicant's benefit for purposes of our consideration of acquired distinctiveness.

identified services are rendered in Mexico, and that he does not render these services in the United States. Applicant stated that approximately one third of the patients treated at applicant's facility in Mexico are from the United States. Applicant indicated that he advertises the services throughout the United States; and that he and The Gerson Institute, a non-profit educational institute, distribute publications about the Gerson Therapy in the United States. He submitted copies of a biography of Dr. Gerson and two brochures issued by The Gerson Institute about the program in Mexico.

The Examining Attorney found applicant's declaration insufficient to establish acquired distinctiveness since applicant has not alleged use of the mark in a type of commerce regulable by Congress and applicant has not submitted an amendment to allege use in the application.

In a request for reconsideration, applicant cited Office policy permitting a Section 2(f) claim of acquired distinctiveness in an intent-to-use application under specified conditions. *Trademark Manual of Examining Procedure (TMEP)*, Section 1212.09. Regarding the sufficiency of his claim, applicant stated that information about the Gerson Therapy has been available for the past several years via the Internet, and that the Gerson Therapy

"has received wide publicity throughout the world, as well as throughout the U.S.A. as a result of publications distributed by the applicant and by the formerly affiliated The Gerson Institute, a U.S. non-profit educational institute, and the presently affiliated Gerson Research Organization, a U.S. public benefit scientific research organization formed in 1993 to publish the results of the Gerson therapy."  Applicant submitted copies of several pages of a Gerson Institute publication entitled "Healing," printouts from The Max Gerson Memorial Cancer Center's Internet website, a copy of a video jacket about the Gerson Therapy, and excerpts mentioning the Gerson Therapy from a 1976 report to NIH "prepared under the auspices of the Workshop on Alternative Medicine" and from a report to the 101st Congress by the Office of Technology Assessment.

Applicant also submitted a declaration stating that he has been "closely affiliated" with the Gerson Institute and the Gerson Research Organization, both located in California; that, since 1977, the mark GERSON has been widely used in the U.S. in the promotion of the Gerson Therapy and of applicant's facility in Mexico, in the publishing of therapy results, and in a bi-monthly newsletter about the therapy; that, since 1977, the mark GERSON has been widely used in the "promotion of and

4

conducting of conventions and seminars to educate health care professionals regarding the Gerson therapy"; that, for more than five years prior to applicant's declaration, "the mark GERSON has been used on newsletters, advertising literature and other publications, tape recordings, educational seminars and other services relating to medical treatment"; and that the mark GERSON "has become distinctive of printed publications, tape recordings, educational seminars and Applicant's services."

The Examining Attorney acknowledged that Office policy permits a claim of acquired distinctiveness in an intent-to-use application under specified conditions, but she rejected the sufficiency of applicant's evidence. The Examining Attorney finally refused registration, under Section 2(e)(4) of the Trademark Act, 15 U.S.C. § 1052(e)(4), on the ground that applicant's mark is primarily merely a surname and applicant has not established, under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), that his mark has acquired distinctiveness in relation to other goods or services that, in this intent-to-use application, will transfer to applicant's use of the mark in connection with the identified services.

Applicant has appealed.  Both applicant and the Examining Attorney have filed briefs, but an oral hearing was not requested.  We affirm the refusal to register.

*Issues*

The issues before us are whether GERSON is primarily merely a surname and, if so, whether applicant has established acquired distinctiveness, under Section 2(f) of the Act, of GERSON as a mark for the services identified in this application.

*Primarily Merely a Surname*

We consider, first, whether GERSON is primarily merely a surname.[2]  It is well established that the Office has the burden of establishing a *prima facie* case that a term is primarily merely a surname, and that the test for determining whether a mark is primarily merely a surname is the primary significance of the mark as a whole to the purchasing public.  *In re BDH Two Inc*., 26 USPQ2d 1556 (TTAB 1993) and cases cited therein.  In this case, we find that the Examining Attorney's evidence and applicant's statements clearly establish that the public would regard

---

[2] While applicant's amendment to assert a claim under Section 2(f) is essentially a concession that his mark is not inherently distinctive, we nonetheless consider the question of whether the Examining Attorney has established that GERSON is primarily merely a surname.  *See, In re Leatherman Tool Group, Inc*., 32 USPQ2d 1443 (TTAB 1994); and Section 1212.02(b) of the *TMEP*.

GERSON, when used in connection with the identified services, as being primarily merely a surname. The Examining Attorney's evidence, including the fact that GERSON has no meaning other than as a surname, establishes the Examining Attorney's *prima facie* case. Applicant does not appear to dispute this conclusion and, in fact, presents no evidence or argument in this regard.

*Claim of Acquired Distinctiveness*

We now turn to the issue that is the focus of applicant's argument in this case, namely, whether acquired distinctiveness has been established for the mark GERSON in connection with the services identified herein.

1. *Establishing Acquired Distinctiveness in an Intent-to-Use Application.*

Section 1212.09 of the *TMEP* states that it is the policy of the Office to accept a claim of acquired distinctiveness in an intent-to-use application prior to the filing of an amendment to allege use or a statement of use, "provided the applicant can establish that, as a result of the applicant's use of the mark on other goods or services, the mark has become distinctive of those other goods or services and that this previously created distinctiveness will transfer to the goods and services specified in the application when the mark is used on or in

connection with them."[3]  *TMEP* Section 1212.09(a).  While the basis for this policy is not stated, we note the language of Section 2(f) of the Act, which states, in pertinent part, "… nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."  Neither the plain language of the Act, nor the legislative history thereof, precludes the filing of a claim of acquired distinctiveness, under Section 2(f) of the Act, in an intent-to-use application prior to the filing of an amendment to allege use or a statement of use in the application.

It is reasonable to assume that applicant's burden of proof to establish this claim is the same as in a use-based application, namely, by a preponderance of the evidence. *Yamaha International Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 6 USPQ2d 1001 (Fed. Cir. 1988).

Further, even though use of the applied-for mark in connection with the goods or services identified in the

---

[3] The Office's initial policy guidelines implementing the Trademark Law Revision Act, P.L. 100-667, 102 Stat. 3935, November 16, 1988, prohibited the filing of a claim of acquired distinctiveness, under Section 2(f) of the Act, in an intent-to-use application prior to the filing of an amendment to allege use or a statement of use.  [See Examination Guide No. 3-89, October 11, 1989, and Examination Guide No. 1-90, March 21, 1990.]  This policy was expressly changed by Examination Guide No. 3-90, August 28, 1990, to permit the acceptance of such filings, and this policy is reflected in the above-noted *TMEP* section.

intent-to-use application has not been asserted, applicant must establish that the mark has acquired distinctiveness in connection with these goods or services.  The required showing is essentially twofold.  First, applicant must establish, through the appropriate submission, the acquired distinctiveness of the same mark in connection with specified other goods and/or services in connection with which the mark is in use in commerce.  All of the rules and legal precedent pertaining to such a showing in a use-based application are equally applicable in this context.  *See, TMEP* Section 1212.09 and *TMEP* sections referenced therein. Second, applicant must establish, through submission of relevant evidence rather than mere conjecture, a sufficient relationship between the goods or services in connection with which the mark has acquired distinctiveness and the goods or services recited in the intent-to-use application to warrant the conclusion that the previously created distinctiveness will transfer to the goods or services in the application upon use.

Because we have found no citable precedent on the issue of establishing acquired distinctiveness of a mark in an intent-to-use application, we look at the analogous question of whether, and under what circumstances,

distinctiveness of a mark in use in commerce in connection with certain goods or services transfers to the use of that same mark in connection with other goods or services.

The case of *Bausch & Lomb Inc. v. Leupold & Stevens Inc.*, 6 USPQ2d 1475 (TTAB 1988), involved an application to register a "gold ring" design in connection with telescopic sights, rifle scopes, handgun scopes, binoculars and spotting scopes.  Opposer contended that the gold ring device served only as ornamentation.  Opposer conceded that, by virtue of the evidence of record and applicant's prior registration for essentially the same mark for rifle scopes, the gold ring design had acquired distinctiveness in connection with rifle scopes and handgun scopes.  But opposer contended that the gold ring design had not acquired distinctiveness in connection with binoculars and spotting scopes.  Applicant conceded that the gold ring design was not inherently distinctive; and that applicant's limited use of the design in connection with binoculars and spotting scopes was insufficient to establish acquired distinctiveness for these goods.  However, applicant asked the Board to find that, because the gold ring design had become distinctive of applicant's rifle scopes and handgun scopes, this goodwill and reputation transferred to applicant's new products which were sold to the same

10

customers as applicant's rifle scopes and handgun scopes. Citing *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 942 (Fed. Cir. 1984), and *In re Loew's Theatres, Inc.*, 769 F.2d 764, 226 USPQ 865, 869 (Fed. Cir. 1985), the Board concluded that "[w]hile applicant can rely to some degree on the distinctiveness which its gold ring device has achieved vis-à-vis rifle scopes and handgun scopes to help demonstrate that the gold ring device has become distinctive of applicant's related products (*i.e.*, binoculars and spotting scopes), applicant must nevertheless present some direct evidence showing that its gold ring device has become distinctive vis-à-vis binoculars and spotting scopes." The Board held that "[a]pplicant has simply failed to carry [the] burden [of establishing that the gold ring device has become distinctive of applicant's binoculars and spotting scopes] in that it has presented no evidence demonstrating that the public recognizes gold ring devices appearing on binoculars or spotting scopes as indicating that these goods originate with, are sponsored by or otherwise associated with applicant."

In the case of *Levi Strauss & Co. v. Genesco, Inc.*, *supra*, Levi Strauss argued that its tab design could be presumed to be distinctive for shoes based on Levi Strauss'

registration and use of the tab for pants and jeans. The court, in affirming the Board's grant of summary judgment to Genesco, stated that "[t]he strength of the tab as a trademark for pants might be relevant if there were evidence establishing public awareness and transference of its trademark function to related goods … and Levi's mere assertion of the possibility of such transference does not raise a genuine issue of material fact."

Similarly, in refusing to find that the geographically descriptive term DURANGO had become distinctive for chewing tobacco based solely on applicant's prior registration of DURANGO for cigars, the court, in *In re Loew's Theatres, Inc.*, *supra*, stated that "the issue of acquired distinctiveness is a question of fact," and "[n]othing in the statute provides a right *ipso facto* to register a mark for additional goods when items are added to a company's line or substituted for other goods covered by a registration." *See also, G.H. Mumm & Cie v. Desnoes & Geddes Ltd.*, 917 F.2d 1292, 16 USPQ2d 1635, 1639 (Fed. Cir. 1990) ("We agree with the Board that Appellant Mumm's mark is a strong mark for sparkling wines. We do not extend that view to other products such as beer – Mumm has neither marketed a beer nor registered its mark for beer.")

We find it reasonable to apply the principles enunciated in these cases to the factual question of whether the established distinctiveness of a mark in use in commerce in connection with specified goods or services will transfer to applicant's use of that mark in connection with the goods or services identified in an intent-to-use application. Thus, we conclude that applicant must establish, by appropriate evidence, the extent to which the goods or services in the intent-to-use application are related to the goods or services in connection with which the mark is distinctive, and that there is a strong likelihood that the mark's established trademark function will transfer to the related goods or services when use in commerce occurs.[4] Simply because the mark may not have been used on or in connection with the goods or services identified in the intent-to-use application, applicant is not excused from the need to demonstrate this strong likelihood of transference in order to establish acquired distinctiveness of the mark in connection with the goods or services with which applicant intends to use the mark.[5]

---

[4] This analysis will vary depending on the facts in each case. We must consider the degree of relationship between the goods and/or services and the nature of the mark itself, for example, whether the matter is a surname, as in the case before us, or whether it is ornamentation, as in the cited *Bausch & Lomb* and *Levi's* cases.

[5] While establishing a likelihood of transference may be more difficult than in a use-based application where evidence about purchaser

We note that Section 1212.09(a) of the *TMEP* includes the following additional statement:

> In the alternative, the applicant may establish that due to the fame of the mark, the previously created distinctiveness for otherwise unrelated goods or services will transfer to the goods and services in the application upon use.

This statement incorrectly states, essentially, that if a mark is famous in connection with specified goods or services, we can *presume* that the mark will acquire distinctiveness in connection with unrelated goods or services upon use. The mere fact that a mark is famous in connection with certain goods or services *does not* necessarily lead to the conclusion that, upon use, distinctiveness will transfer to use of the mark in connection with unrelated goods or services in an intent-to-use application.[6] The owner of a famous mark must still establish a strong likelihood of transference of the

---

perception of applicant's mark is more readily available because the mark is in use in commerce, there are numerous ways such a showing could be made, including, but not limited to, results of focus groups and market surveys of prospective purchasers, and/or evidence regarding practices in the relevant industry.

[6] As stated in the context of a likelihood of confusion analysis, but equally applicable herein, notwithstanding the fame of a mark, the owner of a mark is not entitled to preclude the subsequent registration of the same or similar mark in connection with any and all goods and services including those completely unrelated to the trademark owner's goods. To do otherwise would be to bestow upon a trademark owner a right in gross which is contrary to the recognized principle of trademark law that ownership of a mark does not create a "monopoly" therein. *See, Amica Mutual Insurance Company v. R.H. Cosmetics Corp.*, 204 USPQ 155 (TTAB 1979) and cases cited therein; *Penthouse International, Ltd. v. Dyn Electronics, Inc.*, 196 USPQ 251 (TTAB 1977).

14

trademark function to the goods or services identified in the intent-to-use application. This factually-based determination will still involve establishing some degree of relationship between the goods or services for which the mark is famous and the goods or services in the intent-to-use application.

2. *Applicant's Claim of Acquired Distinctiveness.*

Applying the standards enunciated herein, we begin by looking at applicant's claim of acquired distinctiveness in connection with the goods and services upon which the term GERSON has been used in commerce. The issue is whether applicant's use and promotion of the surname GERSON in connection with these goods and services over a period of time has been of such a nature and extent that the primary significance of the term in the minds of the consuming public is no longer primarily merely as a surname, but rather as an indication of the source of such goods and services. *See, In re McDonald's Corp.*, 230 USPQ 304 (TTAB 1986); and *In re Advanced Spine Fixation Systems, Inc.*, 25 USPQ2d 1363 (TTAB 1992).

In this regard, applicant has submitted two declarations and evidence regarding use of the term GERSON. The first declaration, signed on November 8, 1996, attests

to applicant's use of GERSON in "international commerce" in connection with medical services offered in Mexico. This declaration is insufficient to establish that GERSON has acquired distinctiveness as applicant's mark for the obvious reason that it does not assert use of GERSON by applicant in connection with any goods or services in a type of commerce lawfully regulated by the U.S. Congress. *See*, Section 45 of the Trademark Act, 15 U.S.C. § 1127.

Similarly, the second declaration, signed on December 3, 1997, is insufficient, alone, to establish the acquired distinctiveness of GERSON as applicant's trademark or service mark due to the ambiguities contained therein. First, it is difficult to discern from this second declaration exactly what are the goods and services in connection with which applicant has used the surname GERSON in commerce. Second, applicant's statements regarding offering therapeutic services and publishing therapy results outside the United States are not relevant to our consideration. Additionally, applicant has made statements in the declaration regarding promotional activities in the United States for his therapy offered in Mexico. However, the exact nature of the promotional activities is not clear and, as discussed herein, much of the evidence in this record, including promotional materials, appears to have

16

emanated from third-party sources.  The record does not establish the relationship between applicant and these sources to permit us to conclude that these uses inure to applicant's benefit.

Applicant does state that through substantially exclusive and continuous use in commerce for more than five years, GERSON has become distinctive of applicant's "printed publications, tape recordings, educational seminars and applicant's services."  The declaration contains additional statements indicating that applicant has, since 1977, published a bi-monthly newsletter and offered conventions and seminars throughout the United States.  Thus, it appears from this language that applicant relies upon the use of GERSON in connection with printed publications, tape recordings and educational seminars for his claim of acquired distinctiveness.

However, while applicant specifies use of his mark in commerce in this declaration, in view of applicant's statement in his prior declaration that his use is in "international commerce" and his references in this second declaration to use and promotional activities outside the United States, it is not clear to us what activities have been performed in this country.  These internal inconsistencies and ambiguities warrant the conclusion that

this declaration, alone, is insufficient to establish acquired distinctiveness.

Consideration of the evidence in the record raises additional questions about claims made in the second declaration.  In particular, applicant states in his declaration that he is "closely affiliated" with two organizations, the Gerson Institute and the Gerson Research Organization, and that the mark GERSON is used in the publishing of a bi-monthly newsletter and the conducting of educational seminars and conventions.  The publications made of record by applicant, including a copy of a newsletter, appear to originate with these organizations, rather than with applicant.  Further, one of these publications from the Gerson Institute contains a reference to a 1981 convention in San Diego, apparently sponsored by the Gerson Institute.  Applicant has provided insufficient information about his relationship to these organizations to warrant the conclusion that these organizations' uses of GERSON or "Gerson therapy" inure to applicant's benefit. Nor is there any evidence in the record from which to conclude that there are other publications or educational seminars clearly originating with, or sponsored by, applicant upon which applicant's claim of acquired distinctiveness rests.

Similarly, to the extent that the term "tape recordings" includes "videotapes," the only evidence in the record in this regard is a brief article about a videotape and a photocopy of the videotape jacket cover indicating the Gerson Institute as the copyright holder.

We find that applicant's second declaration, considered together with the evidence in the record, falls far short of proving that GERSON has acquired distinctiveness as applicant's trademark and service mark for printed publications, educational seminars, tape recordings, or any other goods or services.[7] Even if we were to conclude that applicant's declaration and evidence clearly establish applicant's use in commerce of the term GERSON in connection with printed publications, tape recordings and educational seminars, it is impossible to determine whether applicant's use as indicated translates into substantial exposure of applicant's goods and services to relevant purchasers or substantial sales to a significant percentage of the relevant market. The record

---

[7] We note, further, that the excerpts submitted by applicant of U.S. government reports refer to the "Gerson therapy," which appears to be a system for treatment of illness, but not to any of the goods or services upon which applicant states he uses the term GERSON. This evidence is not persuasive of applicant's claim that GERSON has become distinctive of applicant's goods and services in connection with which the term GERSON may be in use.

contains no evidence of consumer perception or information linking applicant's evidence with use in contexts that would condition consumers to react to or recognize the designation as an indication of applicant as the source of such goods and services.

Thus, we conclude that applicant has not established that the term GERSON has acquired distinctiveness as a mark identifying applicant as the source of any goods or services upon which the term may be in use in a type of commerce which may be lawfully regulated by Congress. Having reached this conclusion, it is unnecessary to consider the relationship between the goods and services upon which the mark has been used in commerce and the services identified herein. Further, because applicant has not established acquired distinctiveness of GERSON in connection with goods and services upon which he has used the mark in commerce, applicant clearly has not demonstrated a strong likelihood of transference of any trademark function in connection with those goods and services to the intended services identified herein.

In conclusion, we find that GERSON is primarily merely a surname and applicant has not established that GERSON has acquired distinctiveness as a service mark in connection with the services identified in this application.

*Decision:* The refusal to register on the ground that the applied-for mark herein is primarily merely a surname, under Section 2(e)(4) of the Trademark Act, and that acquired distinctiveness thereof has not been established, under Section 2(f) of the Trademark Act, is affirmed.

C. E. Walters

B. A. Chapman

H. R. Wendel
Administrative Trademark Judges,
Trademark Trial and Appeal Board