Hearing:                                    Mailed: October 5, 2009
August 11, 2009                                               PTH

THIS OPINION IS A CITABLE
PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re White Rock Distilleries, Inc.
_____

Serial No. 77093221
_____

Daniel I. Schloss of Greenberg Traurig, LLP for White Rock Distilleries, Inc.

Renee Servance, Trademark Examining Attorney, Law Office 111 (Craig D. Taylor, Managing Attorney).
_____

Before Quinn, Hairston and Bergsman, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

An application was filed by White Rock Distilleries, Inc. to register the mark VOLTA (standard character format) for goods ultimately identified as "energy vodka infused with caffeine" in International Class 33.[1]

Registration was refused by the trademark examining attorney under Section 2(d) of the Trademark Act on the

_____

[1] Serial No. 77093221, filed January 29, 2007, alleging a date of first use anywhere and a date of first use in commerce of August 20, 2007.

ground that applicant's mark, when used on applicant's goods, so resembles the previously registered mark shown below



for "sparkling fruit wine; sparkling grape wine; sparkling wine; wines,"[2] as to be likely to cause confusion.

When the refusal was made final, applicant appealed. Applicant and the examining attorney filed briefs.

Our determination of the issue of likelihood of confusion is based on analysis of all of the probative

---

[2] Registration No. 3247456, issued May 29, 2007. The registration contains the following statements: (1) The mark consists of the drawing of a vine shoot in various shades of brown and black, below of which appears the word TERZA in capital black letters and below it the word VOLTA in smaller capital yellow letters. The color brown appears in the vine shoot drawing. The color black appears in the vine shoot drawing as well as in the word TERZA. The color yellow appears in the word VOLTA. (2) The color(s) Black, Brown and Yellow is/are claimed as a feature of the mark. (3) The foreign wording in the mark translates into English as third party.

facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also, In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24 (CCPA 1976).

We first turn to compare the marks. In determining the similarity or dissimilarity of the marks, we must compare the marks in their entireties as to appearance, sound, connotation and commercial impression. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than specific impression of trademarks. *Sealed Air Corp. v. Scott Paper Co.*, 119 USPQ 106 (TTAB 1975).

As to appearance, we find that the prominent design feature and the term TERZA in the registered mark serve to distinguish the registered mark visually from applicant's mark. The term TERZA clearly dominates over the term VOLTA in the registered mark as TERZA appears in large bold letters above VOLTA. The examining attorney contends that the respective marks are similar because applicant may display its VOLTA mark in the same lettering as the literal portion of registrant's mark and with a similar design. When a word is registered in standard character format, the Board must consider all reasonable manners of display that could be represented, including the same stylized lettering as that in which a registrant's mark appears. *See Phillips Petroleum Co. v. C. J. Webb, Inc.*, 442 F.2d 1376, 170 USPQ 35 (CCPA 1971). *See also, In re Data Packaging Corp.*, 453 F.2d 1300, 1302 (CCPA 1972) ["It seems to be well established that a single registration of a word mark may cover all of its different appearances, potential as well as actual"]. In this case, however, the literal portion of registrant's mark does not appear in stylized lettering. Rather, it appears in a plain block style of lettering under the more prominent design. Furthermore, rights associated with a word mark in standard character (or typed) form reside in the wording and not in any particular

4

display of the word. See Trademark Manual of Examining Procedure (TMEP) §1207.01(c)(iii)(5th ed. 2007). Generally, rights in the word would not be extended to include protection for that word combined with, for example, other words or a design element. *See Fossil, Inc. v. The Fossil Group*, 49 USPQ2d 1451, 1454 (TTAB 1998) ["[O]pposer's typed drawing registrations of FOSSIL afford opposer a scope of protection which encompasses all reasonable manners in which the word FOSSIL could be depicted including, simply by way of example, all lower case block letters, all upper case block letters, a mixture of lower case and upper case block letters and various script forms. However, opposer's registrations of the word FOSSIL in typed drawing form do not afford opposer rights in the word FOSSIL combined with other wording or with designs"]. In this case, it would not be reasonable to assume that applicant's VOLTA mark would be presented with the design element appearing in registrant's mark. In sum, we find that the respective marks are not similar in appearance.

As to sound, because the literal portion of the registered mark begins with the term TERZA, this mark sounds somewhat different from applicant's mark.

With respect to connotation, the examining attorney has offered several different meanings of the individual

terms "terza" and "volta" in Italian.  Regardless of the various meanings, we find that the marks, as applied to the respective goods, are arbitrary.  In other words, neither mark has any meaning as applied to the respective goods.  At best, applicant's VOLTA mark may be considered a "play" on the word "volt," and suggest a "rush," when applied to applicant's energy vodka infused with caffeine.  Registrant's TERZA VOLTA and design mark, however, makes no such suggestion when applied to registrant's wines.  In short, we find that the respective marks do not have similar connotations.

Finally, when we consider the marks in their entireties, we find that they engender different commercial impressions.  The *du Pont* factor of the similarity of the marks, therefore, favors applicant.

We next consider the goods, trade channels, and purchasers.  It is not necessary that the respective goods be identical or even competitive in order to support a finding of likelihood of confusion.  Rather, it is sufficient that the goods are related in some manner, or that the circumstances surrounding their marketing are such that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they

6

originate from or are in some way associated with the same source or that there is an association or connection between the sources of the respective goods. *In re Melville Corp.*, 18 USPQ2d 1386 (TTAB 1991); *In re International Telephone & Telegraph Corp.*, 197 USPQ2d 910 (TTAB 1978).

We find that the examining attorney has failed to establish on this record that applicant's goods and registrant's goods are related. There is no per se rule that holds that all alcoholic beverages are related. *See G. H. Mumm & Cie v. Desnoes & Geddes Ltd.*, 917 F.2d 1292, 16 USPQ2d 1635 (Fed. Cir. 1990)[RED STRIPE and design for beer was not confusingly similar to a design of a red stripe for wines and sparkling wines]; *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*, 505 F.2d 719, 184 USPQ 34 (CCPA 1974) [DUET for prepared alcoholic cocktails, some of which contained brandy, and DUVET for French brandy and liqueurs not confusingly similar]. See also, TMEP §1207.01(a)(iv) ["there can be no rule that certain goods or services are *per se* related, such that there must be a likelihood of confusion from the use of similar marks in relation thereto"].

The examining attorney submitted excerpts from several Internet websites showing that (1) vodka and wine

7

are offered on the same website to the same consumers, and (2) there are several vodkas which are made with wine grapes. This evidence, however, is hardly sufficient to convince us that applicant's energy vodka infused with caffeine and registrant's wines are related. There is no evidence that vodka, much less applicant's specific type of vodka, and wine emanate from a single source under a single mark. Also, there is no evidence that energy vodka infused with caffeine and wine are ingredients for any particular cocktails such that we could consider them complementary products that would be bought and used together. Although vodka and wine may both be described generally as "alcoholic beverages," this is insufficient to establish that applicant's and registrant's goods are related. *See General Electric Company v. Graham Magnetics Inc.*, 197 USPQ 690 (TTAB 1977) [It is not enough to find one term that may generically describe the goods]. Furthermore, although we may assume that vodka and wine are sold to the same class of purchasers, namely persons of legal drinking age, this is not a sufficient basis on which we may conclude that such goods are related. In this case, the examining attorney has failed to present evidence which establishes that applicant's energy vodka infused with caffeine and registrant's wines are related goods. The *du Pont* factor

of the similarity of the goods, therefore, favors applicant.

Balancing the *du Pont* factors in this case, we find that notwithstanding that the respective goods travel in the same channels of trade to the same class of purchasers, confusion is unlikely because the marks are too dissimilar and the goods have not been shown to be related.

**Decision**:  The refusal to register under Section 2(d) is reversed.